IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| SITE PRO-1, INC., | ) | |
| Plaintiff, | ) | No. CV-06 6508 |
| v. | ) | JUDGE GLASSER<br>MAGISTRATE JUDGE REYES, JR. |
| BETTER METAL, LLC, | ) | JURY DEMAND |
| Defendant. | ) | |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

Dockets.Justia.com

# TABLE OF CONTENTS

Page

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS .......... 1

I. STATEMENT OF FACTS .......... 1

II. ARGUMENT .......... 2

A. Legal Standard .......... 2

B. Plaintiff Fails to Plead an Element Necessary to Each of Its Four Causes of Action: Use of the Subject Mark in Commerce .......... 3

C. Site Pro-1's Count for "Federal Unfair Competition" Also Fails for Failure to Reference an Unregistered Trademark .......... 10

D. Site Pro-1's State Law Unfair Competition Count Also Fails For Failure to Allege Bad Faith on the Part of Better Metal .......... 10

III. CONCLUSION .......... 11

CERTIFICATE OF SERVICE .......... 12

# TABLE OF AUTHORITIES

## FEDERAL CASES

1-800 Contacts v. WhenU.Com, Inc., 414 F.3d 400 (2d Cir. 2005) ...................... 3, 4, 5, 6, 7, 8, 9

Brookfield Communications v. West Coast Entertainment Corp., 174 F.3d 1036 (9th Cir. 1999) ........................................................................................................... 8, 9

Information Superhighway, Inc. v. Talk America, Inc., 395 F. Supp. 2d 44 (S.D.N.Y. 2005) ........................................................................................................... 4

Louis Vuitton Malletier v. Dooney & Bourke, 454 F.3d 108 (2d Cir. 2006)............................. 10

Martin v. Gantner, 443 F. Supp. 2d 367 (E.D.N.Y. 2006) ..................................................... 2, 3

Merck & Co. Inc. v. Mediplan Health Consulting, Inc., 425 F. Supp. 2d 402 (S.D.N.Y. 2006) ........................................................................................................... 5

Merck & Co., Inc. v. Mediplan Health Consulting, Inc., 431 F. Supp. 2d 425 (S.D.N.Y. 2006) ........................................................................................................... 5

Omicron Capital, LLC. v. Omicron Capital, LLC., 433 F. Supp. 2d 382 (S.D.N.Y. 2006)........... 9

Pirone v. MacMillan, Inc., 894 F.2d 579 (2d Cir. 1990)........................................................... 4

Playboy Enterprises, Inc. v. Netscape Communications Corp., 354 F.3d 1020 (9th Cir. 2003) ........................................................................................................... 8, 9

RescueCom Corp. v. Google, Inc., 456 F. Supp. 2d 393 (N.D.N.Y. 2006) ...........................4, 6, 7

Saratoga Vichy Spring Co. v. Lehman, 625 F.2d 1037 (2d Cir. 1980)...................................... 10

Savin Corp.v. Savin Group, 391 F.3d 439 (2d Cir. 2004)......................................................... 3

U-Haul Intern., Inc. v. WhenU.com, Inc., 279 F. Supp. 2d 723 (E.D. Va. 2003) ........................ 3

Walker v. City of N.Y., 974 F.2d 293 (2d Cir. 1992) .............................................................. 3

## STATE CASES

Koon Chun Hing Kee Soy & Sauce Factory, Ltd. v. Star Mark Management, Inc., 2007 WL 74304 (E.D.N.Y. Jan. 8, 2007) (quoting Omicron Capital, LLC. v. Omicron Capital, LLC., 433 F. Supp. 2d 382, 395 (S.D.N.Y. 2006)) ....................................4, 9, 10

## FEDERAL STATUTES

15 U.S.C. § 1114(1)........................................................................................................ 3

15 U.S.C. § 1125(a)..................................................................................................... 3, 10

15 U.S.C. § 1125(c)........................................................................................................ 3

15 U.S.C. § 1127(1)........................................................................................................ 4

15 U.S.C. § 1127(2)........................................................................................................ 4

## RULES

Fed. R. Civ. P. 12(b)(6) .......................................................................... 1, 2, 5, 6, 11

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| SITE PRO-1, INC.,<br><br>Plaintiff,<br><br>v.<br><br>BETTER METAL, LLC,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. CV-06 6508<br><br>JUDGE GLASSER<br>MAGISTRATE JUDGE REYES, JR.<br><br>JURY DEMAND |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the defendant, Better Metal, LLC ("Better Metal"), respectfully submits this memorandum in support of its motion to dismiss the claims filed by the plaintiff, Site Pro-1, Inc. ("Site Pro-1"),[1] for failure to state a claim upon which relief can be granted.

## I. STATEMENT OF FACTS

The Complaint alleges as follows:[2]

Better Metal manufacturers and sells products for the wireless industry, including antenna mounts utilized in the construction of wireless telecommunications towers. Compl. [Docket No. 1], ¶ 12. Better Metal is a competitor of the plaintiff, Site Pro-1, who sells similar products. Compl., ¶¶ 6, 11, 13. Better Metal and Site Pro-1 operate internet websites at www.bettermetal.com and www.sitepro1.com, respectively. Compl., ¶¶ 9, 12. On July 4, 2006,

[1] On information and belief, Plaintiff's name actually is Site Pro 1, Inc. (with no hyphen). However, since Plaintiff calls itself "Site Pro-1" in the caption of its Complaint, that spelling is used herein.

[2] Better Metal does not stipulate to the truth of these facts, except as specifically stated. These facts are presented as stated in the Complaint given that this motion will be determined under the Rule 12(b)(6) standard.

Site Pro-1 received a Certificate of Registration (No. 3,111,463) from the United States Patent and Trademark Office for the trademark SITE PRO 1. Compl., Ex. 1.

The key allegations of the Complaint are as follows:

> 14. Upon information and belief, for the purpose of improperly directing Internet users to its site, Better Metal placed SitePro1's SITE PRO 1® trademark in the metadata and/or meta tags of its www.bettermetal.com and/or improperly included SitePro1's SITE PRO 1® in a search engine algorithm utilized by the Yahoo! Search engine.
>
> 15. When an internet user performs a search for "Site Pro 1", the Yahoo! Search engine retrieves a listing for the www.bettermetal.com site and posts that listing before SitePro1's www.sitepro1.com website. See Exhibit B [to the Complaint].

Compl., ¶¶ 14, 15. Although these two allegations are somewhat unclear, Better Metal admits that it purchased a "sponsored search" from Yahoo! that caused the www.bettermetal.com site to be included among the listings when a Yahoo! search engine user searched for some combination of the keywords "1," "pro" and "site," as reflected in Exhibit B to the Complaint.[3] However, the SITE PRO 1 trademark was not displayed in the sponsored search result linking to www.bettermetal.com. Compl., Ex. 2.

## II. ARGUMENT

### A. Legal Standard.

On a motion to dismiss pursuant to Rule 12(b)(6), this Court must accept as true the factual allegations in the Complaint, viewing them in light most favorable to the non-moving party. Martin v. Gantner, 443 F. Supp. 2d 367, 370 (E.D.N.Y. 2006) (Glasser, J.). "Dismissal under Rule 12(b)(6) is appropriate if 'it appears beyond doubt that the Plaintiff can prove no set

[3] Although admittedly not dispositive of this Rule 12(b)(6) motion, it is worth nothing that Better Metal has since cancelled its order for this sponsored search, as a Yahoo! search will verify.

of facts in support of her claim which entitle her to relief.'" Id. at 371 (quoting Walker v. City of N.Y., 974 F.2d 293, 298 (2d Cir. 1992)).

This Court should dismiss the Complaint because, even when the Complaint is viewed in the light most favorable to Site Pro-1, Site Pro-1 can prove no set of facts demonstrating that Better Metal used Site Pro-1's trademark in a manner that is actionable under the applicable trademark and unfair competition laws.

### B. Plaintiff Fails to Plead an Element Necessary to Each of Its Four Causes of Action: Use of the Subject Mark in Commerce.

Based on the above factual allegations, Site Pro-1 asserts four causes of action against Better Metal: (1) federal trademark infringement (15 U.S.C. § 1114(1)); (2) federal unfair competition (15 U.S.C. § 1125(a)); (3) federal trademark dilution (15 U.S.C. § 1125(c)); and (4) state law unfair competition. These four causes of action share a common necessary element: use of the subject mark in commerce. See 1-800 Contacts v. WhenU.Com, Inc., 414 F.3d 400, 406-07 (2d Cir. 2005) ("In order to prevail on a trademark infringement claim for registered trademarks, pursuant to 15 U.S.C. § 1114, or unregistered trademarks, pursuant to 15 U.S.C. § 1125(a)(1), a plaintiff must establish that (1) it has a valid mark that is entitled to protection under the Lanham Act; and that (2) the defendant used the mark, (3) in commerce, (4) 'in connection with the sale . . . or advertising of goods or services,' 15 U.S.C. § 1114(1)(a), (5) without the plaintiff's consent.") (emphasis added; citations omitted); Savin Corp.v. Savin Group, 391 F.3d 439, 449 (2d Cir. 2004) (one necessary element of a claim under 15 U.S.C. § 1125(c) is that "the defendants is making commercial use of the mark in commerce."); U-Haul Intern., Inc. v. WhenU.com, Inc., 279 F. Supp. 2d 723, 729 (E.D. Va. 2003) (entering judgment as a matter of law for the defendant on claim of trademark dilution because the plaintiff was "unable to show that WhenU was using U-Haul's marks as defined in the Lanham Act.");

RescueCom Corp. v. Google, Inc., 456 F. Supp. 2d 393, 404 (N.D.N.Y. 2006) (same principle); Koon Chun Hing Kee Soy & Sauce Factory, Ltd. v. Star Mark Management, Inc., 2007 WL 74304, at *13 n.18 (E.D.N.Y. Jan. 8, 2007) (Bianco, J.) ("'To prevail on a claim for unfair competition under New York common law, a plaintiff must couple its evidence supporting liability under the Lanham Act with additional evidence demonstrating the defendant's bad faith.'") (quoting Omicron Capital, LLC. v. Omicron Capital, LLC., 433 F. Supp. 2d 382, 395 (S.D.N.Y. 2006)); Information Superhighway, Inc. v. Talk America, Inc., 395 F. Supp. 2d 44, 56 (S.D.N.Y. 2005) ("The elements necessary to prevail on common law causes of action for trademark infringement and unfair competition mirror Lanham Act claims."). Thus, this Court must grant Better Metal's motion to dismiss unless Site Pro-1 has alleged that Better Metal has engaged in a "use in commerce" of the subject mark, as defined in the cases interpreting the Lanham Act. See 1-800 Contacts v. WhenU.Com, Inc., 414 F.3d 400, 412 (2d Cir. 2005) ("Use" must be decided as a threshold matter because, while any number of activities may be "in commerce"; no such activity is actionable under the Lanham Act absent the "use" of a trademark.). As demonstrated below, the Complaint does not contain any such allegation.

A trademark is "used in commerce" in connection with goods when "it is placed in any manner on the goods or the containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale, and . . . the goods are sold or transported in commerce." 15 U.S.C. § 1127(1). A mark is "used in commerce" in connection with services "when it is used or displayed in the sale of advertising of services and the services are rendered in commerce." 15 U.S.C. § 1127(2). Thus, an alleged "use" of a mark can be infringing for purposes of the Lanham Act "only if it is a 'trademark use,' that is, one indicating source or origin." Pirone v. MacMillan, Inc., 894 F.2d 579, 583 (2d Cir. 1990); see also 1-800 Contacts,

414 F.3d at 408 (trademark use "ordinarily at issue in an infringement claim" involves placement of trademarks on "goods or services in order to pass them off as emanating from or authorized by" the trademark owner).

The United States District Court for the Southern District of New York recently determined the exact issue presented in this case, holding that the purchase of "sponsored" internet searches does not constitute a use in commerce, and therefore cannot represent a Lanham Act violation. In Merck & Co. Inc. v. Mediplan Health Consulting, Inc., 425 F. Supp. 2d 402 (S.D.N.Y. 2006) ("Merck I"), Merck alleged that three defendants had committed trademark infringement by "purchas[ing] from Internet search engine companies Google and Yahoo the right to have their websites displayed among the first results returned, as sponsored links, when a computer user conducts a search for the keyword 'ZOCOR.'" Merck I, 425 F. Supp. 2d at 415. Based on the above definitions of "use in commerce," the Merck I court held that the purchase of such sponsored links did not constitute a use in commerce. Id. at 416. The Court reasoned:

> Here, in the search engine context, defendants do not "place" the ZOCOR marks on any goods or containers or displays or associated documents, nor do they use them in any way to indicate source or sponsorship. Rather, the ZOCOR mark is "used" only in the sense that a computer user's search of the keyword "Zocor" will trigger the display of sponsored links to defendants' websites. This internal use of the mark "Zocor" as a key word to trigger the display of sponsored links is not use of the mark in a trademark sense. Cf. 1-800 Contacts, 414 F.3d at 408 (holding that defendant's inclusion of plaintiff's website address, www.1800contacts.com, in defendants internal directory to trigger pop-up ads was not "use" in the trademark sense).

Id. As such, the Merck I court dismissed the plaintiff's Lanham Act claim pursuant to Rule 12(b)(6). The Merck I court subsequently reaffirmed its holding. See Merck & Co., Inc. v. Mediplan Health Consulting, Inc., 431 F. Supp. 2d 425, 427 (S.D.N.Y. 2006) ("Merck II")

("[D]efendants' purchase from Google and Yahoo of the right to have their websites displayed as 'sponsored links' when a computer user searches the keyword 'Zocor' does not constitute trademark use.").

The United States District Court for the Northern District of New York also recently determined a very similar issue. In RescueCom Corp. v. Google, Inc., 456 F. Supp. 2d 393 (N.D.N.Y. 2006), Google was accused of a panoply of federal and state law trademark-related violations for selling the keyword "Rescuecom" to the plaintiff's competitors "as a keyword that triggers the competitors' sponsored links to appear on the search results page when an Internet user enters Rescuecom as a search term."[4] RescueCom, 456 F. Supp. 2d at 400. Google moved to dismiss each of these claims pursuant to Rule 12(b)(6), arguing that such allegations did not state a "trademark use" of the plaintiff's mark. Id. at 395, 402. The Court granted Google's motion, dismissing each of these claims. Id. at 403. The Court held that Google's "use of plaintiff's trademark to trigger sponsored links is not a use of a trademark within the meaning of the Lanham Act . . . because there is no allegation that defendant places plaintiff's trademark on any goods, containers, displays, or advertisements, or that its internal use is visible to the public." Id. (emphasis added). Correspondingly, the RescueCom court dismissed each of the plaintiff's Lanham Act claims.

The RescueCom court also relied on the holding of the Second Circuit Court of Appeals in 1-800 Contacts, in which the Second Circuit considered a similar fact pattern: an "alleged effort by [the defendant] to capitalize on an [Internet] user's specific attempt to access the [plaintiff's] website" by causing a pop-up advertisement for the defendant to appear. 1-800

[4] Specifically, the plaintiff brought claims for federal trademark infringement, false designation of origin, federal trademark dilution, common law trademark infringement, and state law dilution. RescueCom, 456 F. Supp. 2d at 395.

Case 1:06-cv-06508-ILG-RER Document 13 Filed 02/09/2007 Page 7 of 12

Contacts, 414 F.3d at 410-11; see also RescueCom, 456 F. Supp. 2d at 403. The Second Circuit held such activity insufficient to show trademark use, positing the following analogy:

> Indeed, it is routine for vendors to seek specific "product placement" in retail stores precisely to capitalize on their competitors' name recognition. For example, a drug store typically places its own store-brand generic products next to the trademarked products they emulate in order to induce a customer who has specifically sought out the trademarked product to consider the store's less-expensive alternative. WhenU employs this same marketing strategy by informing C-users who have sought out a specific trademarked product about available coupons, discounts, or alternative products that may be of interest to them.

1-800 Contacts, 414 F.3d at 410-11 (quoted in RescueCom, 456 F.Supp. at 403).

In the present case, this is exactly what Better Metal did by purchasing a sponsored search from the Yahoo search engine: Better Metal merely caused Yahoo to put its website address on the "shelf" next to Site Pro-1's website address. As Exhibit 2 to the Complaint plainly shows, neither the link to Better Metal's internet site nor the surrounding text mentions Site Pro-1 or its trademark at all. Rather, the subject link is faithfully identified as a link to www.bettermetal.com, where the user will find the website of Better Metal. At the same time, Site Pro-1's website is plainly listed as search result "1" and bears the description "SITE PRO 1 Manufacturer of Wireless Site Components 1-888-GET-PRO 1" with the subtext "Welcome to Site Pro 1, the premier manufacturer of wireless site components. We are the experts and we are here to help you," followed by a direct link to Site Pro-1's website. Compl., Ex. 2. As such, it is absurd to suggest that a customer could be confused as to the source or origin of Better Metal's products or services any more than a customer would be confused by a tube of Crest toothpaste sitting next to a tube of Colgate toothpaste in a convenience store. Neither situation constitutes a use in commerce under the Lanham Act.

Better Metal acknowledges that some courts outside of the Second Circuit have held that the purchase of a sponsored search (or a functionally equivalent act) may constitute a use in commerce. For example, the Ninth Circuit Court of Appeals in Brookfield Communications v. West Coast Entertainment Corp., 174 F.3d 1036 (9th Cir. 1999) held that the defendant could not place the trademarked term “moviebuff” as a metatag in its website, where that might cause search engines to list the defendant’s website in response to searches for “moviebuff.” The Brookfield decision has been criticized, however, even within the Ninth Circuit. For example, in Playboy Enterprises, Inc. v. Netscape Communications Corp., 354 F.3d 1020, 1034 (9th Cir. 2003), Judge Berzon issued a scathing dissent particularly to question the continuing viability of Brookfield. In doing so, Judge Berzon reasoned -- as the Second Circuit did in 1-800 Contacts -- that such “use” is analogous to product placement and therefore not a true “use in commerce” in the trademark sense:

> For example, consider the following scenario: I walk into Macy’s and ask for the Calvin Klein section and am directed upstairs to the second floor. Once I get to the second floor, on my way to the Calvin Klein section, I notice a more prominently displayed line of Charter Club clothes, Macy’s own brand, designed to appeal to the same people attracted by the style of Calvin Klein’s latest line of clothes. Let’s say I get diverted from my goal of reaching the Calvin Klein section, the Charter Club stuff looks good enough to me, and I purchase some Charter Club shirts instead. Has Charter Club or Macy’s infringed Calvin Klein's trademark, simply by having another product more prominently displayed before one reaches the Klein line? Certainly not. [citations omitted]
>
> Similarly, suppose a customer walks into a bookstore and asks for Playboy magazine and is then directed to the adult magazine section, where he or she sees Penthouse or Hustler up front on the rack while Playboy is buried in back. One would not say that Penthouse or Hustler had violated Playboy's trademark. This conclusion holds true even if Hustler paid the store owner to put its magazines in front of Playboy’s.
>
> One can test these analogies with an on-line example: If I went to Macy’s website and did a search for a Calvin Klein shirt, would

> Macy's violate Calvin Klein's trademark if it responded (as does Amazon.com, for example) with the requested shirt and pictures of other shirts I might like to consider as well? I very much doubt it.
> . . .
> There will be time enough to address the continuing vitality of *Brookfield* should the labeled advertisement issue arise later.... Should the question arise again, in this case or some other, this court needs to consider whether we want to continue to apply an insupportable rule.

Playboy Enterprises, Inc., 354 F.3d at 1035-36 (Berzon, J., dissenting). Significantly, the Second Circuit, in 1-800 Contacts, specifically referenced Judge Berzon's dissent in Playboy Enterprises, Inc. and specifically declined to endorse the Brookfield holding and certain of its progeny. See 1-800 Contacts, 414 F.3d at 411 n.15. Rather, as noted above, the Second Circuit expressly adopted Judge Berzon's product placement analogy and further held that

> A company's internal utilization of a trademark in a way that does not communicate it to the public is analogous to an individual's private thoughts about a trademark. Such conduct simply does not violate the Lanham Act, which is concerned with the use of trademarks in connection with the sale of goods or services in a manner likely to lead to consumer confusion as to the source of such goods or services.

1-800 Contacts, Inc., 414 F.3d at 409. Here, whatever "use" Better Metal made of the terms "pro," "site" and "1" was transparent to the public, so there is no "use in commerce" under the Lanham Act. Nor is there state law unfair competition, the elements of which are keyed to the Lanham Act. See, e.g., Koon Chun Hing Kee Soy & Sauce Factory, Ltd. v. Star Mark Management, Inc., 2007 WL 74304, at *13 n.18 ("'To prevail on a claim for unfair competition under New York common law, a plaintiff must couple its evidence supporting liability under the Lanham Act with additional evidence demonstrating the defendant's bad faith.'") (quoting Omicron Capital, LLC. v. Omicron Capital, LLC., 433 F. Supp. 2d 382, 395 (S.D.N.Y. 2006)). As such, the Court should dismiss Site Pro-1's Complaint for failure to state a claim on which relief can be granted.

**C. Site Pro-1's Count for "Federal Unfair Competition" Also Fails for Failure to Reference an Unregistered Trademark.**

Plaintiff's "federal unfair competition" cause of action is also deficient for another reason. 15 U.S.C. § 1125(a), otherwise known as Section 43(a) of the Lanham Act, addresses what is often called "unfair competition," or infringement of an unregistered mark. See Louis Vuitton Malletier v. Dooney & Bourke, 454 F.3d 108, 114 (2d Cir. 2006) ("This section [1125(a)] protects from infringement unregistered trademarks.") In this case, however, the plaintiff's Complaint centers solely on a registered federal trademark. Plaintiff does not reference any unregistered mark. As such, Plaintiff fails to state a claim under Section 43(a). A plaintiff obviously cannot sue for infringement of an unregistered trademark without purporting to have an unregistered trademark.

D. **Site Pro-1's State Law Unfair Competition Count Also Fails For Failure to Allege Bad Faith on the Part of Better Metal.**

To prevail on its common law unfair competition claim, Site Pro-1 must couple evidence supporting liability under the Lanham Act with additional evidence demonstrating bad faith by Better Metal. See Saratoga Vichy Spring Co. v. Lehman, 625 F.2d 1037, 1044 (2d Cir. 1980) ("The essence of an unfair competition claim under New York law is that the defendant has misappropriated the labors and expenditures of another. . . . Central to this notion is some element of bad faith."); Koon Chun Hing Kee Soy & Sauce Factory, Ltd. v. Star Mark Management, Inc., 2007 WL 74304, at *13 n.18 (discussed supra, at p. 9). There is absolutely no allegation whatsoever in the Complaint that Better Metal acted in bad faith. As such, Site Pro-1's state law unfair competition count is also ripe for dismissal on this additional ground.

## III. CONCLUSION

For all the foregoing reasons, Better Metal respectfully requests that this Court dismiss this action pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted and grant Better Metal such other and further relief as the Court deems just and equitable.

Respectfully submitted,

/s/ Jonathan D. Rose

Thor Y. Urness (TU3908)
Jonathan D. Rose (JR8848)
BOULT, CUMMINGS, CONNERS & BERRY, PLC
1600 Division Street, Suite 700
P.O. Box 340025
Nashville, Tennessee 37203
(615) 252-2384

*Attorneys for Better Metal, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing is being forwarded via ECF, to:

John F. Gallagher, III, Esq.
THE FARRELL LAW FIRM
333 Earle Ovington Blvd.
Uniondale, NY 11553

on this the 9th day of February, 2006.

s/ Jonathan D. Rose
Jonathan D. Rose