UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

Site Pro-1, Inc.,

               Plaintiff                Civil Action No. 05cv6508
v.                                             Judge Glasser
                                                       Magistrate Judge Reyes, Jr.

Better Metal, LLC,

                                             **ORAL ARGUMENT REQUESTED**

               Defendant
_____/

**OPPOSITION TO RULE 12(b)(6) MOTION**

Dockets.Justia.com

**TABLE OF CONTENTS**

Page

I. INTRODUCTION .................................................. 1

II. FACT SUMMARY ................................................. 2

        A. THE COMPLAINT ........................................ 2

        B. METADATA ............................................ 2

        C. SPONSORED SEARCHES ................................. 3

        D. THE PARTIES .......................................... 4

III. ARGUMENT .................................................... 4

        A. DEFENDANT FAILS TO MEET THE HIGH
RULE 12(b)(6) STANDARD OF "BEYOND DOUBT" ............. 4

        B. DEFENDANT'S METADATA USE IS
A USE IN COMMERCE .................................... 5

        C. USE OF A TRADEMARK IN A SPONSORED SEARCH
IS A USE IN COMMERCE ................................. 7

            i. *1-800 Contacts* ADDRESSES THE TRANSFORMATIVE
USE OF POP-UP ADVERTISEMENTS ................. 9

            ii. DEFENDANT IMPROPERLY IGNORES THE
EXPRESS LIMITATION STATED IN *1-800 Contacts* ... 9

            iii. THE RATIONALE OF *Edina Realty*
DIRECTLY APPLIES TO DEFENDANT'S INFRINGEMENT ... 10

IV. CONCLUSION .................................................. 12

## TABLE OF AUTHORITIES

**CASES**                                                                                                                                           **Page(s)**

*Australian Gold Inc. v. Hatfield,*
    436 F.3d 1228, 77 U.S.P.Q.2d 1968 (10th Cir. 2006) .......................... 5, 8

*Bayer HealthCare LLC v. Nagrom Inc.,*
    72 U.S.P.Q.2d 1751(D. Kan. 2004) .................................................. 6

*Bernheim v. Litt,*
    79 F.3d 318(2d Cir. 1996) ............................................................ 5

*Bihari v. Gross,*
    119 F.Supp.2d 309, 56 U.S.P.Q.2d 1489 (S.D.N.Y. 2000) ................ 2, 6

*Brookfield Communications v. West Coast Entertainment,*
    174 F.3d 1036, 1062, 50 U.S.P.Q.2d 1545 (9th Cir. 1999) ...................... 5

*Chance v. Armstrong,*
    143 F.3d 698 (2d Cir. 1998) .......................................................... 4

*Conley v. Gibson,*
    355 U.S. 41(1957) ..................................................................... 4

*Edina Realty Inc. v. MLSonline.com,*
    80 U.S.P.Q.2d 1039, 2006 WL 737064 (D. Minn. 2006) ...................... 8

*Einhorn v. Mergatroyd Productions,*
    79 U.S.P.Q.2d 1146 (S.D.N.Y. 2006) ............................................. 6

*Google Inc. v. American Blind & Wallpaper Factory Inc.,*
    74 U.S.P.Q.2d 1385, 2005 WL 832398 (N.D. Cal. 2005) .................... 8

*Government Employment Ins. Co. v. Google Inc.,*
    330 F.Supp.2d 700, 73 U.S.P.Q.2d 1212 (E.D. Va. 2004) ................ 3, 9

*Gregory v. Daly,*
    243 F.3d 687 (2d Cir. 2001) ....................................................... 4, 5

*Horphag Research LTD v. Pelligrini,*
    337 F.3d 1036, 67 U.S.P.Q.2d 1532 (9th Cir. 2003) ............................ 5

**CASES**                 **Page(s)**

*Merck & Co. v. Mediplan Health Consulting Inc.*,
    431 F.Supp.2d 425, 80 U.S.P.Q.2d 1540 (S.D.N.Y. 2006) .................. 8

*PACCAR Inc. v. TeleScan Technologies LLC*,
    319 F.3d 242, 65 U.S.P.Q.2d 1761 (6th Cir 2003) ....................... 2

*Playboy Enterprises, Inc. v. Netscape Comm. Corp.*,
    354 F.3d 1020, 69 U.S.P.Q.2d 1417 (9th Cir. 2003) .................. 6, 7, 9

*Polaroid Corp v. Polarad Elecs. Corp.*,
    287 F.2d 492, 128 U.S.P.Q. 411 (2d Cir. 1961) ..................... 6, 11

*Promatek Indus., LTD v. Equitrac Corp.*,
    300 F.3d 808, 63 U.S.P.Q.2d 2018 (7th Cir. 2002) .................... 5, 6

*RescueCom Corp. v. Google, Inc.*,
    456 F.Supp.2d 393 (N.D.N.Y. 2006) ................................ 10

*Savin Corp. v. Savin Group*,
    391 F.3d 439, 73 U.S.P.Q.2d 1273 (2d Cir. 2004) ..................... 11

*Scheuer v. Rhodes*,
    416 U.S. 232 (1974) ............................................. 4

*Tdata Inc. v. Aircraft Technical Publishers*,
    411 F.Supp.2d 901, 79 U.S.P.Q.2d 1351 (S.D. Ohio 2006) ............... 6

*Todd v. Exxon Corp.*,
    275 F.3d 191 (2d Cir. 2001) ....................................... 4

*Toys "R" US, Inc. v. Canarsie Kiddie Shop, Inc.*,
    559 F.Supp. 1189, 217 U.S.P.Q. 1137 (E.D.N.Y. 1983) ................ 11

*U-Haul Intern., Inc. v. WhenU.com, Inc.*,
    279 F.Supp.2d 723, 68 U.S.P.Q.2d 1038 (E.D. Va. 2003) .............. 9, 11

*1-800 Contacts Inc. v. WhenU.com Inc.*,
    414 F.3d 400, 75 U.S.P.Q.2d 1161 (2d Cir. 2005) ................ 6, 7, 9, 10

**STATUTES AND RULES**

Rule 12(b)(6), FED.R.CIV.P .................................................. 1, 4, 11


**OTHER AUTHORITY**

J. Thomas McCarthy, Trademarks and Unfair Competition (4th ed.) ..................... 3

## I. INTRODUCTION

Defendant's Rule 12(b)(6), FED.R.CIV.P., motion fails to provide the necessary showing that it is beyond doubt that plaintiff can prove no set of facts in support of the claim for relief. The Complaint provides all necessary detail regarding the two separate infringing uses that defendant has made of the subject SITE PRO 1® trademark. Each such use has been recognized by the courts as a use in commerce actionable under the Lanham Act. To dismiss defendant's motion, this Court need only find that one use is a use in commerce under the Lanham Act.

The first use in commerce stated in the Complaint is use of the subject SITE PRO 1® trademark in the metadata of defendant's *www.bettermetal.com* website to improperly divert traffic to its website. Use of a Federally registered trademark in website metadata (referred to herein as "metadata use") is a well-recognized use in commerce that is actionable under the Lanham Act.

The second use in commerce stated in the Complaint is use of the subject SITE PRO 1® trademark by defendant to purchase a sponsored search from Yahoo!.com. In regard to this use in commerce, defendant incorrectly argues that it is free to purchase a sponsored search of any words, without regard for issued trademarks or for the good will that a trademark owner has developed in its mark. Other than to improperly divert consumers attempting to locate plaintiff via Internet search, there is <u>no other reason</u> for defendant —as plaintiff's direct competitor— to have purchased the sponsored search. This act by defendant creates initial source confusion that is an actionable use in commerce under the Lanham Act.

Either of the two above-stated uses in commerce provides sufficient grounds for dismissal of defendant's motion.

## II. FACT SUMMARY

### A. THE COMPLAINT

The Complaint, at ¶¶ 14-16 specifies that either of the following two acts by defendant constitute an unauthorized, infringing use of plaintiff's SITE PRO 1® trademark:

- defendant's placing words identical to plaintiff's registered trademark in the metadata and/or meta tags of defendant's *www.bettermetal.com* website (i.e. "metadata use"); or

- defendant's purchase from a non-party internet search engine of a sponsored search solely for the purpose of improperly diverting consumers to its *www.bettermetal.com* website (i.e. sponsored search infringement).

### B. METADATA

The first unauthorized trademark use in commerce stated in the Complaint of the SITE PRO 1® trademark is use in metadata embedded in defendant's website. Metadata, often referred to as metatags, are

> hypertext markup language ('HTML') code, invisible to the Internet user that permits web designers to describe their web pages. There are two different types of metatags: keyword and description. The keyword metatag permits designers to identify search terms for use by search engines. Description metatags allow designers to briefly describe the contents of their pages. This description appears as sentence fragments beneath the webpages's listing in a search result.

*Bihari v. Gross*, 119 F.Supp.2d 309, 56 U.S.P.Q.2d 1489, 1491 fn 3 (S.D.N.Y. 2000). Also see *PACCAR Inc. v. TeleScan Technologies LLC*, 319 F.3d 242, 65 U.S.P.Q.2d 1761, 1763 fn 2 (6th Cir 2003) ("A 'metatag' is a list of words hidden in a web site acting as an index or reference source identifying the content of the web site for search engines. ... Metatags have been 'analogized to the subject index of a card catalog indicating the general subject of a book.'"

citing J. Thomas McCarthy, Trademarks and Unfair Competition § 25:69 (4th ed.).)

In this present case, the willful aspect of defendant's infringement is evident from its intentional hiding of its infringing metadata use by configuring its *www.bettermetal.com* website to preclude identification of metadata utilized therein. See, ¶ 11 of the Declaration of Louis N. Podesta (the "Podesta Decl." herein).

C.  **SPONSORED SEARCHES**

The second, and separate, unauthorized trademark use in commerce stated in the Complaint is the purchase of a sponsored search to divert consumers searching for the SITE PRO 1® trademark. Google, Yahoo.com! and other internet search engines "sell advertising linked to search terms, so that when a consumer enters a particular search term, the results page displays not only a list of Websites generated by the search engine program using neutral and objective criteria, but also links to Websites of paid advertisers (listed as 'Sponsored Links')." *Government Employees Ins. Co. v. Google Inc.,* 330 F.Supp.2d 700, 702, 73 U.S.P.Q.2d 1212, 1213 (E.D. Va. 2004).

Advertisers who purchase such sponsored keyword searches must inform the Internet search engine of the specific words that the advertisers want to use to divert consumers who are performing searches utilizing the Internet search engine. The searched keywords can be generic terms such as "telephone," "cable" or "metal." However, issues of trademark infringement arise when the specified searched keywords are protected by trademark registration, such as the "Site Pro 1" keywords that have been registered as a Federal trademark.

Once an advertiser purchases the keywords, the search engine, such as Yahoo.com!, will hyperlink the keywords to the advertiser's website. The advertiser pays to list its website at the

Page -3-

highest priority position of the search result page. As shown on Exhibit B of the Complaint, when a consumer enters the SITE PRO 1® trademark in the Yahoo!.com search engine, defendant's *www.bettermetal.com* "sponsored link" appears as the top-most result on the search page, causing initial interest confusion.

### D.   THE PARTIES

Plaintiff Site Pro-1 owns U.S. Trademark Registration No. 3,111,463 for SITE PRO 1® mark. Defendant Better Metal is a direct competitors of plaintiff. Complaint ¶ 11. This action was not brought against an Internet search provider.

### III. ARGUMENT

### A.   DEFENDANT FAILS TO MEET THE HIGH RULE 12 (b)(6) STANDARD OF "BEYOND DOUBT"

A court may not dismiss an action under a Rule 12(b)(6), FED.R.CIV.P., motion "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957). "'[T]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Todd v. Exxon Corp.,* 275 F.3d 191, 198 (2d Cir. 2001) (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974)). A complaint may not be dismissed under Rule 12(b)(6), FED.R.CIV.P., "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Chance v. Armstrong,* 143 F.3d 698, 701 (2d Cir. 1998) (quoting *Conley,* 355 U.S. at 45-46). When considering a motion to dismiss a complaint under Rule 12(b)(6), a court "'must accept as true all of the factual allegations set out in plaintiff's complaint, draw inferences from those allegation in the light most favorable to

plaintiff, and construe the complaint liberally.'" *Gregory v. Daly,* 243 F.3d 687, 691 (2d Cir. 2001) (quoting *Conley,* 355 U.S. at 45-46). Also see, *Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir. 1996).

B.  **DEFENDANT'S METADATA USE IS A USE IN COMMERCE**

Defendant's use of plaintiff's registered trademark in the metadata hidden on its website is an infringing use in commerce.[1] Defendant's motion ignores the law of courts in the Second Circuit, as well as the law of the majority of the other circuits on this issue of trademark infringement via metadata use, and incorrectly focuses on inapposite 9th Circuit concurring opinion, in an attempt to find as excuse for free riding on the goodwill developed by plaintiff.[2]

Defendant's motion overlooks the recent Tenth Circuit holding in *Australian Gold Inc. v. Hatfield,* 436 F.3d 1228, 77 U.S.P.Q.2d 1968 (2006), which found actionable initial interest confusion caused by defendants' resale of plaintiffs' indoor tanning lotions over the Internet. Similar to the facts presented by Better Metal's infringement in this pending action, the defendant in *Australian Gold* used plaintiffs' marks in metadata on defendants' websites. *Id.,* at 1972. The Ninth and Seventh Circuits are in accord. In *Brookfield Communications v. West Coast Entertainment,* 174 F.3d 1036, 1062, 50 U.S.P.Q.2d 1545 (9th Cir. 1999) the court found that although consumers are not confused when they reach a competitor's website, an actionable

---

[1] Defendant sought to cover-up its infringing metadata use by configuring its website to preclude identification of metadata utilized therein. Podesta Decl., ¶ 11.

[2] Defendant's argument is an improper attempt to justify its free-riding off the good will that plaintiff has developed in its SITE PRO 1® trademark. See, ¶¶ 8-9 of the accompanying Declaration of Joseph P. Catapano.
Defendant was made aware of plaintiff's trademark rights in the SITE PRO 1® trademark at least as early as April 29, 2004, when plaintiff sent a letter regarding defendant's infringement of the SITE PRO 1® trademark in regard to defendant's registration of a sitepro1.com domain name. *Id.,* ¶¶ 1-4 of the Catapano Decl.

initial interest confusion nevertheless existed. In *Horphag Research LTD v. Pelligrini*, 337 F.3d 1036, 1040, 67 U.S.P.Q.2d 1532 (9th Cir. 2003), the court found that "[b]ecause [defendant] admits to using Horphag's Pycnogenol trademark and specifically admits to using the Pycnogenol mark in the meta-tags for his websites, his use satisfies the terms of trademark infringement in the first instance." Similarly, in *Promatek Indus., LTD v. Equitrac Corp.*, 300 F.3d 808, 812, 63 U.S.P.Q.2D 2018 (7th Cir. 2002), the court found that a likelihood of confusion was created by placing a competitor's trademark in website metadata.

Numerous other district courts have reached the same conclusion that metadata use is a use in commerce. In *Tdata Inc. v. Aircraft Technical Publishers*, 411 F.Supp.2d 901, 79 U.S.P.Q.2d 1351 (S.D. Ohio 2006), the court held that defendant's use of plaintiff's marks as metadata constitutes infringing use of marks to pull consumers to defendant's website and its products, even if consumers later realize their confusion. The court in *Bayer HealthCare LLC v. Nagrom Inc.*, 72 U.S.P.Q.2d 1751, 1755 (D. Kan. 2004), is also in accord, finding that "the use of the ... mark in the metatags for Defendants' website creates initial interest confusion." (citations omitted.) [3]

Looking past the holding of these numerous courts that metadata use is a use in commerce, defendant relies on a concurring opinion in *Playboy Enterprises, Inc. v. Netscape Comm. Corp.*, 354 F.3d 1020, 69 U.S.P.Q.2d 1417 (9th Cir. 2003), to support its argument

---

[3] Courts in the Second Circuit have tacitly found that metadata use is a use in commerce. In *Bihari v. Gross*, 119 F.Supp.2d 309, 56 U.S.P.Q.2d 1489, 1498 (S.D.N.Y. 2000), the use a trademark in metadata was considered under the eight-factor *Polaroid* test, in regard to a descriptive fair use made only to fairly identify content of the website. See, *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495, 128 U.S.P.Q. 411 (2d Cir. 1961). In *Einhorn v. Mergatroyd Productions*, 79 U.S.P.Q.2d 1146, 1149 (S.D.N.Y. 2006) (05cv8600 (LAK)), the court addressed 'metastuffing' as a use in commerce in regard to alleged trademark infringement.

regarding metadata use. The *Playboy* addresses banner advertisements, which the *1-800 Contacts* court has indicated is a different type of use, as discussed in detail in the next section.[4]

For at least the above reasons, defendant's use in metadata of plaintiff's SITE PRO 1® trademark, as stated in the Complaint at ¶¶14-16, is a use in commerce that is actionable under the Lanham Act. Whether or not defendant's use is an acceptable use, such as comparative use, is an issue that is not presently before this Court. Defendant's metadata use, standing alone, is sufficient to deny defendant's motion.

### C. USE OF A TRADEMARK IN A SPONSORED SEARCH IS A USE IN COMMERCE

Defendant, as plaintiff's direct competitor, has blatantly used plaintiff's SITE PRO 1® trademark in a Yahoo!.com sponsored search, for the sole purpose of improperly diverting consumers attempting to locate plaintiff via Internet search. Defendant's motion fails to make the required showing of how an intentional diversion of customers could not be deemed to be a an infringing use in commerce under the Lanham Act.

Although the law continues to evolve in regard to the nascent issue of sponsored search infringement, the courts that have considered the specific issue of use of a registered trademark to divert consumers from a competitor's website have found an actionable use in commerce. None of the cases that defendant cites address this issue, which is the only issue relevant to the sponsored search alleged in this action.

The courts that have addressed the issue of sponsored searches distinguish the manner in

---

[4] Contrary to the sequential searching performed via the results of a sponsored search, "banner advertisements" appear as an overlay on a user's computer screen along with the website of the trademark owner that the consumer sought to locate.

Page -7-

which a competitor's trademark is used when determining whether an actionable trademark use exists under the Lanham Act. For example, in *Merck & Co. v. Mediplan Health Consulting Inc.*, 431 F.Supp.2d 425, 80 U.S.P.Q.2d 1540, 1541-42 (S.D.N.Y. 2006), the court found it significant that "defendants actually sell Zocor, albeit Zocor manufactured by Merck's Canadian affiliates. Hence, there was nothing improper —in a trademark sense— with their purchase of sponsored links tied to searches of the keyword 'Zocor.'" Accordingly, it is incorrect for defendant to allege that *Merck & Co.* presents "the exact issue presented in this case," as done at page 5 of its motion, at least in view of the actual authorized sale by defendants of the Zocor product at issue.

Defendant's motion also incorrectly relies on *1-800 Contacts Inc. v. WhenU.com Inc.*, 414 F.3d 400, 75 U.S.P.Q.2d 1161 (2d Cir. 2005). *1-800 Contacts* fails to address the relevant issue of sponsored search use. To the contrary, *1-800 Contacts* addresses pop-up advertisements, which transform the subject trademark before use. Further, defendant's motion improperly ignores the specific limitation expressed by the Second Circuit in *1-800 Contacts*, as discussed below.

*1-800 Contacts* is a pop-up advertisement case, akin to the *U-Haul Intern., Inc. v. WhenU.com, Inc.*, 279 F.Supp.2d 723, 68 U.S.P.Q.2d 1038, 1039 (E.D. Va. 2003), decision that defendant also cites. Defendant in *1-800 Contacts* "is an internet marketing company that uses a proprietary software called 'SaveNow' to monitor a computer user's internet activity in order to provide the computer user ... with advertising, in the form of 'pop-up ads,' that is relevant to that activity." 75 U.S.P.Q.2d at 1162. In *1-800 Contacts*, the alleged infringement was based on, "[w]hen the SaveNow software recognizes a term, it randomly selects an advertisement from the corresponding product or service category to deliver to the C-user's computer screen at roughly

the same time the website or search result sought by the C-user appears." 75 U.S.P.Q.2d at 1164.

### i. *1-800 Contacts* ADDRESSES THE TRANSFORMATIVE USE OF POP-UP ADVERTISEMENTS

In *1-800 Contacts*, the Second Circuit explained that:

> the differences between the marks are quite significant because they <u>transform</u> 1-800's trademark — which is entitled to protection under the Lanham Act — into a word combination that functions more or less like a public key to 1-800's website.

75 U.S.P.Q.2d at 1167 (emphasis provided). Contrary to the facts of the *1-800 Contacts* pop-up advertisement case, defendant Better Metal is entirely unable to allege any transformation of the SITE PRO 1® trademark that it elected to use to divert consumers to its own competing website.

### ii. DEFENDANT IMPROPERLY IGNORES THE EXPRESS LIMITATION STATED IN *1-800 Contacts*

Defendant's motion overlooks the express limitation that the Second Circuit provided with its *1-800 Contacts* ruling. That is, the Second Circuit in *1-800 Contacts* clearly and unambiguously stated its decision

> is not intended to suggest that inclusion of a trademark in the directory would necessarily be an infringing 'use.' <u>We express no view on this distinct issue.</u>

75 U.S.P.Q.2d at 1167 (emphasis provided). Accordingly, the analysis proposed by defendant in reliance on the rationale of *1-800 Contacts* does not apply to the sponsored search issue that is presented by defendant Better Metal's use of the SITE PRO 1® trademark.

Like the "pop-up" advertisement addressed in *1-800 Contacts*, the other cases relied on by defendant are based on inapplicable facts. In *RescueCom Corp. v. Google, Inc.*, 456 F.Supp.2d 393 (N.D.N.Y. 2006), the alleged use was made by an internet provider, rather than by

a competitor of the trademark owner. *Savin Corp. v. Savin Group*, 391 F.3d 439, 73 U.S.P.Q.2d 1273, 1275 (2d Cir. 2004), is a cybersquatting dispute in which the district court moved past the threshold use issue and performed *Polaroid* analysis.[5] *U-Haul* is another pop-up advertisement dispute, the holding of which is predicated on "the computer user consented to this detour when the user downloaded WhenU's computer software from the Internet." 68 U.S.P.Q.2d at 1039.

### iii. THE RATIONALE OF *Edina Realty* DIRECTLY APPLIES TO DEFENDANT'S INFRINGEMENT

Contrary to the analysis that defendant proposed, the sponsored search infringement by Better Metal is exactly the same type of infringement considered in *Edina Realty Inc. v. MLSonline.com*, 80 U.S.P.Q.2d 1039, 2006 WL 737064 (D. Minn. 2006). The finding in *Edina* that use of a rival's trademark as a keyword is a use in commerce is based on the following rationale, which is directly applicable to the infringement by Better Metal.

> Defendant uses the mark as an Internet search term, in its Sponsored Link advertisements, and in hidden text and hidden links on its website. None of these uses requires the Edina Realty mark. In its advertisements and hidden links and hidden text, defendant could easily describe the contents of its website by stating that it includes all real estate listings in the Twin Cities. Similarly, defendant could rely on other search terms, such as Twin Cities real estate, to generate its advertisement.

80 U.S.P.Q.2d 1045. Also relevant are:

- *Google Inc. v. American Blind & Wallpaper Factory Inc.*, 74 U.S.P.Q.2d 1385, 1391, 2005 WL 832398 (N.D. Cal. Mar. 30, 2005), finding sale of marks as keywords is a use in commerce, "given the most relevant Ninth Circuit decision —*Playboy Enterprises, Inc. v. Netscape Communications Corp.*, 354 F.3d 1020, 69 U.S.P.Q.2d 1417 (9th Cir.

---

[5] *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495, 128 U.S.P.Q. 411 (2d Cir. 1961)

2004)— it does not appear 'beyond doubt' that American Blind 'can prove no set of facts in support of [its] claim[s] that would entitle [it] to relief'";

- *Government Employment Ins. Co. v. Google Inc.* held that:

  > that plaintiff has sufficiently alleged that defendants used plaintiff's protected marks in commerce. This decision does not necessarily mean that defendants' use of plaintiff's trademarks violates either the Lanham Act or Virginia common law of unfair competition. That decision cannot be reached until discovery has been completed.

  73 U.S.P.Q.2d at 1215

- *Australian Gold Inc.*, 77 U.S.P.Q.2d at 1976, in which defendants were found to have improperly:

  > paid Overture.com to list Defendants in a preferred position whenever a computer user searched for Plaintiffs' trademarks. All of these actions were attempts to divert traffic to Defendants' Web sites. ... Thus, Defendants used the goodwill associated with Plaintiffs' trademarks in such a way that consumers might be lured to the lotions from Plaintiffs' competitors. This is a violation of the Lanham Act.

Accordingly, significant authority exists to find that defendant's use of the subject SITE PRO 1® trademark in the purchase of a sponsored search from Yahoo!.com creates initial source confusion that is an actionable use in commerce under the Lanham Act. See, *Toys "R" US, Inc. v. Canarsie Kiddie Shop, Inc.*, 559 F.Supp. 1189, 217 U.S.P.Q. 1137, 1141 (E.D.N.Y. 1983).

## IV. CONCLUSION

For the alternative reasons provided above, defendant has failed to show that plaintiff can prove no set of facts in support of the claim for relief. Accordingly, defendant's Rule 12(b)(6), FED.R.CIV.P., motion must be dismissed.

Dated: March 16, 2007
      Uniondale, New York

Respectfully submitted,
**THE FARRELL LAW FIRM**

By: _/s/_
John F. Gallagher III (JFG-3174)
333 Earle Ovington Blvd., Suite 701
Uniondale, NY 11553
(516) 228-3565
Attorneys for Plaintiff
SITE PRO-1, INC.