IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SITE PRO-1, INC., | ) |
| Plaintiff, | ) No. CV-06 6508 |
| v. | ) JUDGE GLASSER |
| | ) MAGISTRATE JUDGE REYES, JR. |
| BETTER METAL, LLC, | ) JURY DEMAND |
| Defendant. | ) |

**<u>REPLY IN SUPPORT OF MOTION TO DISMISS</u>**

## TABLE OF CONTENTS

Page

REPLY IN SUPPORT OF MOTION TO DISMISS ................................................................... 1

I.  Contrary to the Result Site Pro 1 Seeks, Trademark Law in the Second Circuit Is Consistent between the Physical and Online Worlds ....................................................... 1

II.  The Affidavits Submitted by Site Pro 1 Are Improper and, in Any Event, Add Nothing to Site Pro 1's Argument .................................................................................... 2

III.  Site Pro 1's Out-of-Jurisdiction Authority Conflicts with the Law of the Second Circuit ................................................................................................................................ 3

IV.  The Two Second Circuit District Cases Site Pro 1 Cites are Inapposite .......................... 7

V.  The Holdings of 1-800 Contacts, Merck I, Merck II, and RescueCom Compel the Dismissal of This Case ...................................................................................................... 8

CONCLUSION ................................................................................................................................ 10

CERTIFICATE OF SERVICE ....................................................................................................... 10

**TABLE OF AUTHORITIES**

**FEDERAL CASES**

1-800 Contacts v. WhenU.Com, Inc., 414 F.3d 400 (2d Cir. 2005) ........................ 2, 4, 6, 7, 8, 10

Australian Gold, Inc. v. Hatfield, 436 F.3d 1228, 1238-40 (10th Cir. 2006) ............................... 5

Bihari v. Gross, 119 F. Supp. 2d 309 (S.D.N.Y. 2000) ..................................................... 6, 7, 8

Brookfield Communications v. West Coast Entertainment, 174 F.3d 1036 (9th Cir.
    1999) ................................................................................................................. 4, 5, 7, 8

Edina Realty Inc. v. theMLSonline.com, 2006 WL 737064 (D. Minn. March 20, 2006) ............. 6

Einhorn v. Mergatroyd, 426 F. Supp. 2d 189 (S.D.N.Y 2006) ...................................................... 7

GEICO v. Google, Inc., 330 F. Supp. 2d 700 (N.D. Va. 2004) ................................................. 6, 7

Goldman v. Belden, 754 F.2d 1059, 1065 (2d Cir. 1985) ............................................................. 2

Gurary v. Winehouse, 190 F.3d 37, 43 (2d Cir. 1999) .................................................................. 3

Hayden v. County of Nassau, 180 F.2d 42, 54 (2d Cir. 1999) ....................................................... 3

Merck & Co. Inc. v. Mediplan Health Consulting, Inc. [Merck I], 425 F. Supp. 2d 402
    (S.D.N.Y. 2006) ............................................................................................................ 8, 10

Merck & Co., Inc. v. Mediplan Health Consulting, Inc. [Merck II], 431 F. Supp. 2d 425
    (S.D.N.Y. 2006) ...................................................................................................... 2, 6, 8, 9

Playboy Enterprises, Inc. v. Netscape Commc'ns Corp., 354 F.3d 1020 (9th Cir. 2003) ....... 2, 5, 8

RescueCom Corp. v. Google, Inc., 456 F.Supp.2d 393 (N.D.N.Y. 2006) ................................. 6, 9

**OTHER AUTHORITY**

Stacey L. Dogan & Mark A. Lemley, Trademarks and Consumer Search Costs on the
    Internet, 41 Hous. L. Rev. 777 (2004) ................................................................................ 5

David M. Klein & Daniel C. Glazer, Reconsidering Initial Interest Confusion on the
    Internet, 93 Trademark Rep. 1035, 1060 (2003) ............................................................... 5

Jennifer E. Rothman, Initial Interest Confusion: Standing at the Crossroads of Trademark
    Law, 27 Cardozo L. Rev. 105 (2005)) ................................................................................ 5

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SITE PRO-1, INC.,                              ) | |
| ) | No. CV-06 6508 |
| Plaintiff,                     ) | |
| ) | JUDGE GLASSER |
| v.                                                    ) | MAGISTRATE JUDGE REYES, JR. |
| ) | |
| BETTER METAL, LLC,                    ) | JURY DEMAND |
| ) | |
| Defendant.                  ) | |

## REPLY IN SUPPORT OF MOTION TO DISMISS

Better Metal, LLC ("Better Metal"), through counsel, respectfully submits this reply in support of its Motion to Dismiss.

**I.  Contrary to the Result Site Pro 1 Seeks, Trademark Law in the Second Circuit Is Consistent between the Physical and "Online" Worlds.**

The fundamental issue before the Court is whether product placement – a practice that is perfectly legal under trademark law in the physical world – becomes illegal when it takes place on the internet. In the physical world, a manufacturer of products often will pay a store to display its products next to those of a better-known competitor, with the hope that when customers seek the better-known brand they will notice the competing product and purchase it instead. As the Second Court of Appeals has explained:

> it is routine for vendors to seek specific "product placement" in retail stores precisely to capitalize on their competitors' name recognition. For example, a drug store typically places its own store-brand generic products next to the trademarked products they emulate in order to induce a customer who has specifically sought out the trademarked product to consider the store's less-expensive alternative.

1-800 Contacts, Inc. v. WhenU.Com, 414 F.3d 400, 411 (2d Cir. 2005).[1]

As a result, we all are familiar with the sight of generic toothpaste brands next to Colgate and of many competing colas next to Coke and Pepsi in "brick and mortar" stores. This practice does not violate trademark laws because the manufacturer paying or otherwise arranging for product placement is not using the well-known brand to identify the source of its products. The result should be no different when it is not physical shelves, but search engines, which are used in "the electronic equivalent of product placement," at issue. Merck & Co., Inc. v. Mediplan Health Consulting, Inc. [Merck II], 431 F. Supp. 2d 425, 427 (S.D.N.Y. 2006).

Site Pro 1, however, argues for a world in which product placement on the internet receives special – and more restrictive – treatment. The Court should reject Site Pro's arguments for the reasons stated in Better Metal's opening Memorandum and below.

## II. The Affidavits Submitted by Site Pro 1 Are Improper and, in Any Event, Add Nothing to Site Pro 1's Argument.

In its Opposition, Site Pro 1 took the unusual step of submitting two affidavits even though Better Metal did not submit any evidence outside the Complaint. Site Pro 1's affidavits are improper because a plaintiff must include sufficient information in its Complaint to state a claim without having to rely on outside evidence. That is the clear policy behind Rule 12(b)(6). See, e.g., Goldman v. Belden, 754 F.2d 1059, 1065 (2d Cir. 1985) ("a Rule 12(b)(6) motion is addressed to the face of the pleading."). Rule 12(b)(6) would become useless and

---

[1] See also Playboy Enterprises, Inc. v. Netscape Commc'ns Corp, 354 F.3d 1020, 1035-36 (9th Cir. 2003) (Berzon, J., concurring) ("[S]uppose a customer walks into a bookstore and asks for Playboy magazine and is then directed to the adult magazine section, where he or she sees Penthouse or Hustler up front on the rack while Playboy is buried in back. One would not say that Penthouse or Hustler had violated Playboy's trademark. This conclusion holds true even if Hustler paid the store owner to put its magazines in front of Playboy's.) Judge Benzon's concurrence is especially relevant to this case because the Second Circuit Court of Appeals cited it with apparent approval in specifically refusing to endorse the line of cases cited by Site Pro 1 in its opposition. See 1-800 Contacts, Inc., 414 F.3d at 411 n.15.

plaintiffs would have little incentive to file well-pleaded complaints if it could be side-stepped in this fashion.

In any event, the subject affidavits consist entirely of irrelevant testimony (such as Mr. Catapano's testimony about a previous dispute between the parties), testimony "on information and belief" and testimony that is already within the realm of the Court's consideration of the facts alleged in the Complaint in the light most favorable to Site Pro 1. Therefore, to the extent the Court considers them at all, these affidavits should have no impact on the Court's determination of this motion. See Hayden v. County of Nassau, 180 F.2d 42, 54 (2d Cir. 1999) (When "the court simply refers to supplementary materials, but does not rely on them or use them as a basis for its decision, the 12(b)(6) motion is not converted into a motion for summary judgment.").[2]

Better Metal acknowledges that, for the purposes of determining this motion, the Court must assume that Better Metal purchased a sponsored search from Yahoo, as reflected in Exhibit 2 to the Complaint, and/or placed data in the metatags of its website to cause a Yahoo search for "Site Pro 1" to yield, among other results, a link to Better Metal's website. However, these facts do not give not rise to actionable trademark infringement or derivative claims.

### III. Site Pro 1's Out-of-Jurisdiction Authority Conflicts with the Law of the Second Circuit.

In its Opposition, Site Pro 1 relies almost exclusively on authority from outside the Second Circuit. This is not surprising since the law of the Second Circuit plainly supports

---

[2] Should the Court determine that the pending motion should be converted to a summary judgment motion, however, Better Metal respectfully requests notice of that conversion and an opportunity to respond appropriately. See Gurary v. Winehouse, 190 F.3d 37, 43 (2d Cir. 1999) ("We have frequently held that a district court ordinarily must give notice to the parties before converting a motion to dismiss pursuant to Rule 12(b)(6) to one for summary judgment and considering matters outside the pleadings.").

dismissal of this case. It is true that some courts in other judicial circuits have denied Rule 12(b)(6) motions under similar facts. This Court, however, is bound to apply the law of the Second Circuit. In the Second Circuit, securing the appearance of a link to one's website on the results page of an internet search engine upon the entry of a competitor's trademark – whether through the purchase of a "sponsored search" or the use of metatags – does not constitute a trademark "use" and, therefore, does not trigger the Lanham Act. Indeed, a finding of "no use" obviates the need to perform any further analysis. See 1-800 Contacts, 414 F.3d at 406 ("WhenU argues that the district court erred in finding that WhenU's pop-up ads create a likelihood of both source confusion and 'initial interest confusion,' as to whether WhenU is 'somehow associated with [1-800] or that [1-800] has consented to [WhenU's] use of the pop-up ad[s].' Because we agree with WhenU that it does not 'use' 1-800's trademarks, we need not and do not address the issue of likelihood of confusion.) (citations omitted; emphasis added).

On the other hand, the out-of jurisdiction cases Site Pro 1 cites short-circuit the Lanham Act analysis by failing to consider whether or not the defendant's actions constitute a trademark "use" and/or improperly conflate the "use" element with other necessary elements of trademark infringement. Site Pro 1 particularly relies on a line of cases originating with the Ninth Circuit's opinion in Brookfield Communications v. West Coast Entertainment, 174 F.3d 1036 (9th Cir. 1999), which applied an "initial interest confusion" analysis. Based on these cases, Site Pro 1 argues that the present motion should be determined under the doctrine of initial interest confusion. In making this argument, Site Pro 1 gets the cart before the horse. As noted above, under the law of the Second Circuit, an analysis of likelihood of confusion is proper only after the court determines that there is a trademark use of the subject mark.

For the above reasons, the Second Circuit in 1-800 Contacts specifically declined to endorse the holding of Brookfield and its progeny. Indeed, in the same stroke that the Second

Circuit signaled its disagreement with Brookfield, it cited with apparent approval the concurring[3] opinion in Playboy, 354 F.3d at 1034, in which Judge Benzon forcefully and cogently argued that the holding of Brookfield is "insupportable" because securing a position in a search engine result does not constitute "use" in a trademark sense, but rather is merely a digital form of permissible product placement. See 1-800 Contacts, 414 F.3d at 411 n.15; Playboy, 354 F.3d at 1034.[4]  It was this very analogy to product placement in the physical world on which the Second Circuit relied in holding that the defendant did not "use" the plaintiff's mark when it "employed this same marketing strategy [product placement] by informing C-users who have sought out a specific trademarked product about available coupons, discounts, or alternative products that may be of interest to them." 1-800 Contacts, 414 F.3d at 411.

Australian Gold, Inc. v. Hatfield, 436 F.3d 1228, 1238-40 (10th Cir. 2006), upon which Site 1 Pro also relies, suffers from the same defect as Brookfield.  In Australian Gold, the Tenth Circuit skipped directly to a likelihood of confusion analysis without addressing the remaining two necessary elements in the Second Circuit: use and commerce.[5]   Thus, Australian Gold is plainly out of step with Second Circuit law.

---

[3] In its opening brief, the undersigned incorrectly identified Judge Benzon's concurrence as a dissent.  Although Judge Benzon was strongly criticizing the result reached in both Playboy and Brookfield, he recognized that his panel was bound by the precedent of Brookfield and therefore did not dissent, but rather advocated an en banc review for purposes of overruling the Brookfield precedent.   The undersigned apologizes for the inadvertent error in labeling Judge Benzon's opinion.

[4] Not only has the Second Circuit specifically refused to endorse the Brookfield rationale and result, but numerous academic commentators have criticized it, too.  See, e.g., Jennifer E. Rothman, Initial Interest Confusion: Standing at the Crossroads of Trademark Law, 27 Cardozo L. Rev. 105, 175 (2005) ("The [Brookfield] court's analogy is wrong on many levels."); Stacey L. Dogan & Mark A. Lemley, Trademarks and Consumer Search Costs on the Internet, 41 Hous. L. Rev. 777, 815-16 (2004) (also criticizing Brookfield highway analogy); David M. Klein & Daniel C. Glazer, Reconsidering Initial Interest Confusion on the Internet, 93 Trademark Rep. 1035, 1060 (2003) (same).

[5] Arguably, the result of 1-800 Contacts is to reject Brookfield's "initial interest confusion" doctrine altogether.  However characterized, the result is the same:  Second Circuit law requires a source identifying "trademark use" before trademark infringement may be found.

Under 1-800 Contacts, it also is clear that where there is no trademark use of a mark, there is no need to analyze the "commerce" element of trademark infringement. Obviously, there is commerce involved when a party purchases a sponsored search. Merely demonstrating the presence of commerce, however, does not establish trademark infringement. Indeed, the Second Circuit specifically criticized two cases upon which Site Pro 1 relies, GEICO v. Google, Inc., 330 F. Supp. 2d 700 (N.D. Va. 2004) and Bihari v. Gross, 119 F. Supp. 2d 309 (S.D.N.Y. 2000), because those opinions improperly leap to a finding of trademark use based simply on the presence of commerce and/or likelihood of confusion. As the Second Circuit stated,

> This rationale puts the cart before the horse. Not only are "use," "in commerce," and "likelihood of confusion" three distinct elements of a trademark infringement claim, but "use" must be decided as a threshold matter because, while any number of activities may be classified as "in commerce" or create a likelihood of confusion, no such activity is actionable under the Lanham Act absent the "use" of a trademark.

1-800 Contacts, 414 F.3d at 412.

Consistent with the above analysis, in deciding RescueCom Corp. v. Google, Inc., 456 F.Supp.2d 393 (N.D.N.Y. 2006), Chief Judge Mordeu specifically considered and rejected many of the out-of-jurisdiction district court cases Site Pro 1 cites in its Opposition (including Edina Realty Inc. v. theMLSonline.com, 2006 WL 737064 (D. Minn. March 20, 2006) and GEICO), finding them "inconsistent with the law of the Second Circuit." RescueCom, 456 F. Supp. 2d at 400. Likewise, in Merck II, Judge Chin specifically rejected the unreported holding of Edina Realty as inconsistent with Second Circuit authority. See Merck II, 431 F. Supp. 2d at 427. In doing so, Judge Chin noted that the Edina Realty court had "specifically recognized that Second Circuit law was inconsistent with its holding." Id. Since the line of cases cited by Site

Pro 1 has been widely criticized and deliberately not followed in this circuit, those cases do not support a denial of Better Metal's Motion to Dismiss.

### IV. The Two Second Circuit District Cases Site Pro 1 Cites are Inapposite.

In a footnote, Site Pro 1 identifies two district court opinions from within the Second Circuit that Site Pro 1 contends "tacitly found that metadata use is a use in commerce." Opposition, at p. 6 n.3.  One of those cases is Einhorn v. Mergatroyd, 426 F. Supp. 2d 189 (S.D.N.Y 2006), a case in which only $1,000 was in dispute.  Site Pro 1's characterization of Einhorn is flatly incorrect.  Although Einhorn involved alleged metadata-related trademark infringement, the Einhorn court never reached the issue of trademark use because it determined that the plaintiff did not prove the existence of a valid trademark in the first instance.  In passing on further analysis, the court stated, "Further, although several courts have analyzed whether metatags including another party's trademark constitute trademark infringement, such an analysis is not relevant here because the Court already has concluded that Einhorn has not alleged facts sufficient to justify a conclusion that his name was a trademark."  Einhorn, 426 F.Supp.2d at 195.  As such, Einhorn is not relevant to the present discussion.

Site Pro 1 also relies upon Bihari, a case that came on the heels of the Ninth Circuit's Brookfield opinion and followed its now-discredited "initial confusion" analysis.  See Bihari, 119 F. Supp. 2d at 319.  As noted above, the Second Circuit expressly refused to endorse the holding of Bihari, and, criticized its holding as "put[ting] the cart before the horse" in conducting an "initial interest confusion" analysis without considering whether a trademark use was present.  See 1-800 Contacts, 414 F.3d at 411 n.15, 412.[6]  The Second Circuit's flat rejection

---

[6] In the same breath, the Second Circuit also criticized the similar holding of Government Employee Ins. Co. v. Google, Inc. [GEICO] v. Google, Inc., 330 F. Supp. 2d 700 (E.D. Va. 2004), another case on which Site Pro 1 relies in its Opposition.

of Bihari undercuts Site Pro 1's argument that Second an initial interest confusion analysis is warranted here.

V.  **The Holdings of 1-800 Contacts, Merck I, Merck II, and RescueCom Compel the Dismissal of This Case.**

In its Opposition, Site Pro 1 attempts to distinguish the Second Circuit authority cited by Better Metal.  As to 1-800 Contacts, Site Pro 1 notes that the Second Circuit stopped short of specifically extending its holding to search engine placement cases.  While this is true, the Second Circuit affirmatively refused to endorse the holdings of Brookfield and Bihari, on which Site Pro 1 relies.  And, as noted above, the Second Circuit specifically cited Judge Benzon's concurring opinion in Playboy, in which he roundly criticized the logical and legal foundation of Brookfield and its progeny, a category into which virtually all of the authority cited by Site Pro 1 falls.  As such, even though the Second Circuit did not specifically extend its holding in 1-800 Contacts to apply to search engine placement, it dropped every possible hint that it will do so when such a case comes before it.  Correspondingly, the three subsequent district court opinions in this circuit addressing the issue of search engine placement have all viewed 1-800 Contacts as solid authority that such placement does not constitute a trademark "use."  See Merck & Co. v. Mediplan Health Consulting, Inc. [Merck I], 425 F. Supp. 2d 402 (S.D.N.Y. 2006); Merck & Co. v. Mediplan Merck II, 431 F. Supp. 2d 425; RescueCom Corp. v. Google, Inc., 456 F. Supp. 2d 393 (N.D.N.Y. 2006).

Furthermore, as the Merck court discussed, for purposes of trademark use analysis no meaningful difference exists between Sponsored Links and WhenU.com's pop-up advertising. See Merck II, 431 F. Supp. 2d at 427 ("I did not overlook the differences between a 'keyword' situation and a 'pop-up ad' situation.  There is a difference, but not, in my view, a meaningful one for these purposes.").  In both situations, a user types in a trademark or a term similar to one.

And in both situations, the user is then presented with a link that does not use the trademark in the text of the link. If anything, the search engine placement situation presents a <u>more</u> clear-cut case of non-trademark use than WhenU.com's pop-up ads. Sponsored (or otherwise manipulated) search results arising from a search the user deliberately sought are, by definition, less intrusive than unsolicited pop-up ads. Additionally, search engine users who type in a search term that is a trademark obviously do not expect the search engine automatically to link the user to the trademark owner's webpage. Rather, when a user types a query into a search engine, that search engine's algorithms generate a listing of web pages (perhaps hundreds or thousands of them) that are contextually relevant to that query. (<u>See</u>, <u>e.g.</u>, Compl., Ex. 2). No reasonable user would expect that all of these listings are sponsored by the trademark owner. Instead, the user is presented with a selection of relevant links and then, if the user desires, she may click on any link of interest, including the link for the holder of the trademark, which (at least in this case) is plainly identified. <u>See</u> Compl., Ex. 2.

As to Chief Judge Mordue's holding in <u>RescueCom</u>, Site Pro 1 distinguishes it by observing that "the alleged use was made by an internet provider, rather than by a competitor of the trademark owner." Opposition, at pp. 9-10. Site Pro 1 makes no attempt to explain the materiality of that distinction, however. Why would the purchaser of a sponsored search keyed off a trademark be treated in differently than the buyer of such search for purposes of trademark use? Site Pro 1 is not able to answer this question. As such, there is no reason this Court should not consider <u>RescueCom</u> to be extremely persuasive authority.

Finally, Site Pro 1 distinguishes <u>Merck II</u> on an immaterial ground, noting Judge Chin's observation that the defendants in that case actually sold products under the plaintiff's tradename, "Zocor." However, this observation was clearly dicta and unnecessary to the court's holding since the Court had already entered a holding of noninfringement two months earlier in

<u>Merck I</u>. As such, Site Pro 1's attempts to distinguish the highly persuasive (if not controlling as to <u>1-800 Contacts</u>) Second Circuit authority cited by Better Metal are ineffectual.

## CONCLUSION

For the reasons stated above and in Better Metal's Memorandum in Support of Motion to Dismiss, Better Metal respectfully requests that the Court dismiss the Complaint in its entirety for failure to state a claim upon which relief can be granted.

Respectfully submitted,

/s/ Jonathan D. Rose
Thor Y. Urness (TU3908)
Jonathan D. Rose (JR8848)
BOULT, CUMMINGS, CONNERS & BERRY, PLC
1600 Division Street, Suite 700
P.O. Box 340025
Nashville, Tennessee 37203
(615) 252-2384

*Attorneys for Better Metal, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing is being forwarded via ECF, to:

John F. Gallagher, III, Esq.
THE FARRELL LAW FIRM
333 Earle Ovington Blvd.
Uniondale, NY  11553

on this the 23th day of March, 2006.

s/ Jonathan D. Rose

1527553 v1
104017-003  03/23/07

- 10 -