1

2                                                            **E-Filed 4/18/2007**

3

4

5

6

7
                              NOT FOR CITATION
8
                    **IN THE UNITED STATES DISTRICT COURT**
9
              **FOR THE NORTHERN DISTRICT OF CALIFORNIA**
10
                              **SAN JOSE DIVISION**
11

12
   GOOGLE INC., a Delaware corporation,        Case Number C 03-5340 JF (RS)
13
                        Plaintiff,             ORDER[1] GRANTING IN PART AND
14                                             DENYING IN PART MOTION FOR
                 v.                            SUMMARY JUDGMENT
15
   AMERICAN BLIND & WALLPAPER                  [re: docket no. 230]
16 FACTORY, INC., a Delaware corporation d/b/a
   decoratetoday.com, Inc., and DOES 1-100,
17 inclusive,

18                      Defendants.

19 AMERICAN BLIND & WALLPAPER
   FACTORY, INC., a Delaware corporation d/b/a
20 decoratetoday.com, Inc.,

21                 Counter Plaintiff,

22               v.

23 GOOGLE INC., AMERICA ONLINE, INC.,
   NETSCAPE COMMUNICATIONS
24 CORPORATION, COMPUSERVE
   INTERACTIVE SERVICES, INC., ASK JEEVES,
25 INC. and EARTHLINK, INC.,

26                 Counter Defendant/
                   Third Party Defendants.
27   _____

28        [1] This disposition is not designated for publication and may not be cited.

   Case No. C 03-5340 JF (RS)
   ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT
   (JFLC1)

Dockets.Justia.com

Plaintiff and Counter Defendant Google Inc. ("Google") moves for summary judgment. Defendant American Blind & Wallpaper Factory, Inc. ("ABWF") opposes the motion. For the reasons discussed below, the motion will be granted in part and denied in part.

## I. BACKGROUND

1.  Procedural Background

Google filed the instant action for declaratory relief on November 26, 2003, seeking a judicial determination that its "AdWords" advertising program does not infringe ABWF's trademarks. On April 12, 2004, the Court denied ABWF's motion to dismiss the complaint or, in the alternative, to stay proceedings in the case. On May 4, 2004, ABWF answered Google's complaint and asserted counterclaims against Google and third-party claims against Ask Jeeves, Inc., Earthlink, Inc., America Online, Inc., Netscape Communications Corporation, and Compuserve Interactive Services, Inc. (collectively "Third-Party Defendants") for: (i) trademark infringement in violation of the Lanham Act; (ii) false representation in violation of the Lanham Act; (iii) trademark dilution under the Lanham Act; (iv) injury to business reputation and dilution in violation of Cal. Bus. & Prof. Code § 14330; (v) unfair competition in violation of Cal. Bus. & Prof. Code § 17200; (vi) common law trademark infringement; (vii) tortious interference with prospective economic advantage; and, in the alternative, (viii) contributory trademark infringement; and (ix) contributory trademark dilution. In an order filed March 30, 2005 ("March 30th Order"), the Court granted the motions of Google and the Third-Party Defendants to dismiss ABWF's claim for tortious interference with prospective business advantage and denied motions to dismiss ABWF's other claims. On December 26, 2006, Google moved for summary judgment.[2] The Court heard oral argument on February 16, 2007.

2.  Factual Background

The factual background of this action is discussed in detail in the March 30th Order. In summary, the action pertains to the sale by Google and the Third-Party Defendants of

---

[2] Google moved for terminating sanctions on the same date. On February 12, 2007, the Court referred that motion to Magistrate Judge Seeborg.

Case No. C 03-5340 JF (RS)
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT
(JFLC1)

1  trademarked terms belonging to ABWF as keywords that trigger "Sponsored Links" on Google's

2  search results pages.  ABWF alleges that Google sells these terms to ABWF's competitors.

3  Google acknowledges that it does this and has provided the Court with a copy of its stated

4  procedure for handling trademark complaints.  That procedure states:

5      When we receive a complaint from a trademark owner, we will only investigate

6      whether the advertisements at issue are using terms corresponding to the
   trademarked item in the advertisement's content.  If they are, we will require the

7      advertiser to remove the trademarked term from the content of the ad and prevent
   the advertiser from using the trademarked term in ad content in the future.  *Please*

8      *note that we will not disable keywords in response to a trademark complaint.*

9  "AdWords Trademark Complaint Procedure," Hamm Decl. Ex. E (emphasis added).  The crux of

10 this dispute is whether Google infringes ABWF's trademarks by refusing to disable trademarked

11 keywords.  To the extent that pertinent factual disputes remain, they are discussed below.

12 **II.  LEGAL STANDARD**

13     A motion for summary judgment should be granted if there is no genuine issue of

14 material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P.

15 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The moving party bears

16 the initial burden of informing the Court of the basis for the motion and identifying the portions

17 of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that

18 demonstrate the absence of a triable issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S.

19 317, 323 (1986).

20     If the moving party meets this initial burden, the burden shifts to the non-moving party to

21 present specific facts showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e);

22 *Celotex*, 477 U.S. at 324.  A genuine issue for trial exists if the non-moving party presents

23 evidence from which a reasonable jury, viewing the evidence in the light most favorable to that

24 party, could resolve the material issue in his or her favor.  *Anderson*, 477 U.S. 242, 248-49;

25 *Barlow v. Ground*, 943 F. 2d 1132, 1134-36 (9th Cir. 1991).

26 **III.  DISCUSSION**

27 1.  <u>Trademark Use in AdWords Program</u>

28     In its March 30th Order denying Google's motion to dismiss, the Court indicated that it

1    would consider at a later date, "both the relevant facts and the applicable law in the context of a

2    fuller record." March 30th Order 16. The Court concluded that "given the state of the governing

3    law, American Blind has made sufficient allegations of direct infringement and dilution by

4    Defendants' advertisers and contributory liability on the part of Defendants such that it does not

5    appear 'beyond doubt' that American Blind 'can prove no set of facts in support of [its] claim[s]

6    that would entitle [it] to relief.'" *Id.* at 15. The Court observed that this approach was consistent

7    with that taken by the district court in *Government Employees Insurance Co. v. Google, Inc.*, 300

8    F.Supp.2d 700 (E.D.Va. 2004) (hereinafter "*GEICO*"). March 30th Order 16.

9           In its motion for summary judgment, Google asks the Court to declare that, as a matter of

10   law, Google's sale of trademarked keywords in its AdWords program does not constitute use in

11   commerce under the Lanham Act.[3] Google points to intervening decisions in other districts that

12   do not follow *GEICO.* The Court has reviewed the intervening cases cited by both parties and

13   has considered the conflict among them in light of the limited guidance offered by existing Ninth

14   Circuit precedent.

15          a.      Developments in the Law Since the March 30th Order

16          Two district courts in the Second Circuit have concluded that the sale of trademarks as

17   keywords for sponsored links does not constitute use for the purpose of the Lanham Act. *Merck*

18   *& Co., Inc. v. Mediplan Health Consulting, Inc.*, 425 F.Supp.2d 402, 408 (S.D.N.Y. 2006),

19

20

---

21          [3] 15 U.S.C. § 1127 defines "use in commerce":
22   "The term 'use in commerce' means the bona fide use of a mark in the ordinary course of trade,
     and not made merely to reserve a right in a mark. For purposes of this chapter, a mark shall be
23   deemed to be in use in commerce--
     (1) on goods when--
24          (A) it is placed in any manner on the goods or their containers or the displays associated
25          therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such
            placement impracticable, then on documents associated with the goods or their sale, and
26          (B) the goods are sold or transported in commerce, and
     (2) on services when it is used or displayed in the sale or advertising of services and the services
27   are rendered in commerce, or the services are rendered in more than one State or in the United
     States and a foreign country and the person rendering the services is engaged in commerce in
28   connection with the services."

                                                      4

Case No. C 03-5340 JF (RS)
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT
(JFLC1)

involved a number of manufacturers of a generic version of the drug Zocor that paid "Google[4] and Yahoo to have links to their websites displayed, as sponsored links, among the first results when a consumer searche[d] the keyword 'Zocor.'" The court based its analysis on *1-800 Contacts v. WhenU.com, Inc.,* 414 F.3d 400 (2d Cir. 2005),[5] a case that dealt with the use of trademark terms to trigger pop-ups. In that case, the Second Circuit concluded that a "company's internal utilization of a trademark in a way that does not communicate it to the public is analogous to a[n] individual's private thoughts about a trademark. Such conduct simply does not violate the Lanham Act . . . ." *Id.* at 409. The *Mediplan* court relied on this logic to conclude that the "internal use of the mark 'Zocor' as a key word to trigger the display of sponsored links is not use of the mark in a trademark sense," *Mediplan*, 425 F.Supp.2d at 415, and granted that aspect of the defendants' motion for judgment on the pleadings.[6]

*Rescuecom Corp. v. Google, Inc.*, 456 F.Supp.2d 393 (N.D.N.Y. 2006), decided shortly after *Mediplan*, reached the same result, also on the basis of *1-800 Contacts*. Plaintiff alleged that Google sold "Rescuecom to plaintiff's competitors as a keyword[7] that trigger[ed] the competitors' sponsored links to appear on the search results page when an Internet user enter[ed] Rescuecom as a search term." *Id.* at 400. The court reasoned that Google's "internal use of

---

[4] The court does not identify the specific program run by Google, but it appears to be the AdWords program.

[5] The *1-800 Contacts* case was decided after the issuance of the March 30th Order.

[6] The court reaffirmed its decision on a subsequent motion for reconsideration. *See Merck & Co., Inc. v. Mediplan Health Consulting*, 431 F.Supp.2d 425, 427 (S.D.N.Y. 2006) ("For the reasons stated in the Opinion, I conclude that defendants' purchase from Google and Yahoo of the right to have their websites displayed as 'sponsored links' when a computer user searches the keyword 'Zocor' does not constitute trademark use."). The court also expanded on its opinion, explaining: "When a computer user typed in the keyword Zocor, she would be offered, by virtue of the internal search engine processes, sponsored links to defendants' websites, in addition to the actual websites generated by the search engine program using neutral and objective criteria. This internal use of the keyword 'Zocor' is not use of the ZOCOR mark to indicate source or sponsorship. It may be commercial use, in a general sense, but it is not trademark use. Indeed, if anything, keywording is less intrusive than pop-up ads as it involves no aggressive overlaying of an advertisement on top of a trademark owner's webpage." *Id.* at 428.

[7] *Rescuecom* involved a challenge to the "AdWords" program.

Case No. C 03-5340 JF (RS)
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT
(JFLC1)

plaintiff's trademark to trigger sponsored links is not a use of a trademark within the meaning of the Lanham Act, [] because there is no allegation that defendant places plaintiff's trademark on any goods, containers, displays, or advertisements, or that its internal use is visible to the public." *Id.* at 403. Thus, the court concluded, such conduct does not violate the Lanham Act, "which is concerned with the use of trademarks in connection with the sale of goods or services in a manner likely to lead to consumer confusion as to the source of such goods." *Id.* The court distinguished *GEICO* on the basis that *GEICO* involved allegations pertaining to "the inclusion of the marks in advertisements," *id.* at 402 (citing *GEICO*, 330 F.Supp.2d at 704), and granted that aspect of Google's motion to dismiss.

Two district courts in New Jersey reached a contrary decision. *800-JR Cigar, Inc. v. GoTo.com, Inc.*, 437 F.Supp.2d 273 (D.N.J. 2006), involved a "pay-for-priority" search engine that "solicit[ed] bids from advertisers for key words or phrases to be used as search terms, giving priority results on searches for those terms to the highest-paying advertiser." *Id.* at 278. The court concluded that this constituted "use" for the purposes of the Lanham Act in three ways:

> First, by accepting bids from those competitors of JR desiring to pay for prominence in search results, GoTo trades on the value of the marks. Second, by ranking its paid advertisers before any 'natural' listings in a search results list, GoTo has injected itself into the marketplace, acting as a conduit to steer potential customers away from JR to JR's competitors. Finally, through the Search Term Suggestion Tool, GoTo identifies those of JR's marks which are effective search terms and markets them to JR's competitors.

*Id.* at 285. The court explained that there were "no disputed material issues of fact which would prevent [it] from concluding, as a matter of law, that GoTo [made] trademark use of JR Cigar's trademarks," and proceeded to consider whether "summary judgment [was] appropriate on the issue of whether GoTo's use of JR's trademarks creates a likelihood of confusion." *Id.* Similarly, in *Buying for the Home, LLC v. Humble Abode, LLC*, 459 F.Supp.2d 310 (D.N.J. 2006), the court ruled that allegations of the purchase of keywords under Google and Yahoo's respective sponsored links programs "clearly satisfy the Lanham Act's 'use' requirement." *Id.* at 323. *See also International Profit Associates, Inc. v. Paisola*, 461 F.Supp.2d 672, 677 n.3 (N.D.Ill. 2006) (citing *Buying for the Home* and stating that "[t]he law in the Seventh Circuit is silent on whether the use of a trademark as a keyword in an online search program such as

1   Google's Adwords is a use 'in commerce' under the Lanham Act as required to establish a claim,

2   but other courts have determined that purchasing a trademarked term as a 'keyword' for Google

3   Adwords program meets the Lanham Act's use requirement.").

4        Unreported decisions from district courts in Minnesota and Delaware reached the same

5   result as that reached by the New Jersey courts. *Edina Realty, Inc. v. TheMLSOnline.Com*, 2006

6   WL 737064 (D.Minn. 2006) (not published in F.Supp.2d) involved a real estate broker that had

7   purchased the trademarked name of a competitor as a keyword search term from Google and

8   Yahoo. Citing *Brookfield Communs., Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1064 (9th

9   Cir. 1999) (hereinafter, *Brookfield*), the court concluded that "[w]hile not a conventional 'use in

10   commerce,' defendant nevertheless uses the Edina Realty mark commercially. . . . Based on the

11   plain meaning of the Lanham Act, the purchase of search terms is a use in commerce." *Id. J.G.*

12   *Wentworth, S.*S.C *v. Settlement Funding LLC*, 2007 WL 30115 (E.D.Pa. 2007) (slip copy)

13   considered the sale of trademarks in Google's AdWord's program. The court concluded that

14   such use "is not analogous to 'an individual's private thoughts' as defendant suggests. By

15   establishing an opportunity to reach consumers via alleged purchase and/or use of a protected

16   trademark, defendant has crossed the line from internal use to use in commerce under the

17   Lanham Act." *Id.* at *6.

18       b.     Existing Ninth Circuit Precedent

19        In considering the persuasive value of these conflicting authorities, this Court necessarily

20   must be guided by the holding of the leading Ninth Circuit case in this area, *Playboy Enterprises,*

21   *Inc. v. Netscape Communications Corp.*, 354 F.3d 1020 (9th Cir. 2004) (hereinafter, *Playboy*).

22   That case involved a challenge to the practice of "keying" sponsored banner ads to Playboy's

23   trademarks "playboy" and "playmate." In discussing the affirmative defenses raised by Netscape,

24   the court emphasized the facts that were not at hand:

25       [W]e are not addressing a situation in which a banner advertisement clearly
        identifies its source with its sponsor's name, or in which a search engine clearly

26       identifies a banner advertisement's source. We are also not addressing a situation
        in which advertisers or defendants overtly compare PEI's[8] products to a

27

28       [8]  Playboy Enterprises Inc.

Case No. C 03-5340 JF (RS)
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT
(JFLC1)

1  competitor's - saying, for example "if you are interested in Playboy, you may also
2  be interested in the following message from [a different, named company]."
   Rather, we are evaluating a situation in which defendants display competitors'
3  unlabeled banner advertisements, with no label or overt comparison to PEI, after
   Internet users type in PEI's trademarks.

4  *Id.* at 1030.[9]   The Court rejected the affirmative defenses raised by Netscape, including the

5  nominative use defense upon which the district court had granted summary judgment, and

6  concluded that Playboy survived summary judgment on the likelihood of confusion under the

7  eight-factor test articulated in *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 431, 438-49 (9th Cir.

8  1979).

9      The facts of the instant case differ from those of *Playboy* in that Google identifies

10  sponsored links as such, while *Playboy* involved banner ads that were "confusingly labeled or not

11  labeled at all." *Playboy*, 354 F.3d at 1023.  ABWF implies in its opposition that Google does not

12  identify sponsored links: "although Google claims publicly that its ads are conspicuous and

13  differentiated from its genuine search results, this is not necessarily true."  Opposition 11.

14  ABWF contends that Google has developed a system that could apply a clear disclaimer stating

15  that the sponsored links are not necessarily sponsored by the trademark owner.  *Id.*  However,

16  ABWF provides no evidence that contradicts Google's description of the placement and

17  identification of sponsored links.  The parties dispute whether the term "Sponsored Links" is

18  confusing, but there is no evidence that Google has failed to identify sponsored links in keeping

19  with its stated policy of doing so[10] and the description of the practice it has provided to this

20  Court.  Nor is there any evidence in the record that Google permits purchasers of sponsored links

21  to use trademarked terms in their text or title when the sponsor does not own the trademark.

22  Nonetheless, the Court concludes that it should follow *GEICO* and other cases finding use in

23  commerce on similar facts.

24      As this Court observed in the March 30th Order,

25

26      [9]  In a footnote, the Court observed that clearly identifying a banner ad's source "might
27  eliminate the likelihood of confusion that exists in this case." *Id.* at n.43.

28      [10]  The parties dispute whether Google defines "Sponsored Links" anywhere on its
   website.  The Court need not resolve that issue for the purposes of the present discussion.

8

it is not at all clear that [the Ninth Circuit's] ultimate conclusion [in *Playboy*] that the defendants' alleged "use" of the plaintiff's trademarks was "actionable' was not based on an implicit, preliminary determination of actionable trademark "use" in the sense [at issue here]. If the use were not actionable in [that] sense, it is unclear why the court would have undertaken a lengthy and, by [Google and Third Party Defendants'] apparent reading of the case, wholly unnecessary likelihood-of-confusion analysis. Moreover, the possibility of such an implicit determination does not appear to have been precluded by the [Ninth Circuit's] observation that there was "[n]o dispute" as to whether [Google and Third Party Defendants] had "used the marks in commerce," as the accompanying footnote suggests that the observation concerned only the jurisdictional requirement of use "*in commerce*" and not the separate requirement of trademark "use."

March 30th Order 14. The Court concluded that it need not address this argument or Google's effort to distinguish *Playboy* on the basis that *Playboy* involved unidentified advertisements because there were relevant facts not before the Court at the motion to dismiss stage. *Id.* at 15. In light of the undisputed facts now in the record, the Court must determine whether *Playboy* makes an implicit finding of trademark use in commerce in the manner at issue here. The Court concludes that it does.

Both the majority and concurring opinions in *Playboy* focus on the likelihood-of-confusion analysis, indicating the Ninth Circuit's sense of where the legal issue in that case lay.[11] Nothing in the majority's discussion of the relevant facts suggests that it questioned whether the plaintiff had shown that there was a use of its trademark in commerce. *See Playboy*, 354 F.3d at 1030.[12] The concurring opinion, which appears to have anticipated a case similar to the instant action, also appears to have assumed trademark use and also focused directly on likelihood-of-confusion analysis: "I do not think it is reasonable to find initial interest confusion when a consumer is never confused as to source or affiliation, but instead knows, or should know, from the outset that a product or web link is not related to that of the trademark holder because the list produced by the search engine so informs him." *Id.* at 1034-35 (Berzon, J., concurring). Judge

---

[11] The Court does not suggest that "use in commerce" does not remain an independent and necessary requirement of trademark infringement. *See* Motion 9 (citing *Karl Storz Endoscopy-America, Inc. v. Surgical Techs., Inc.*, 285 F.3d 848, 855-56 (9th Cir. 2002)).

[12] Instead, the majority stated that where "[t]he Internet user [reaches] the [competitor's] site because of [the competitor's] use of [a] mark [to key unlabelled banner ads, s]uch use is actionable." *Id.* at 1026.

9

Berzon does not identify "use in commerce" as an open front in this area of law or suggest that remains a question for a later date. Instead, she suggests that future Ninth Circuit decisions should address the viability of existing Ninth Circuit precedent on the scope of the initial interest confusion doctrine "should the labeled advertisement issue arise later." *Id.* at 1036

*Brookfield*, the principal case relied upon by the *Playboy* majority, involved "metatags," terms on a webpage that are invisible to a consumer, but seen by a search engine. The plaintiffs alleged that Defendants used trademarks as metatags in an effort to draw traffic to their site and away from that of the holder of the trademarks. The Ninth Circuit concluded that "using a competitor's trademark in the metatags of [a] website is likely to cause what we have described as initial interest confusion. These forms of confusion are exactly what the trademark laws are designed to prevent." *Id.* at 1066. As it did later in *Playboy*, the Ninth Circuit focused its analysis on initial interest confusion and did not question whether the metatags were used in commerce in the sense at issue here. *Brookfield*, like *Playboy*, suggests that the Ninth Circuit would assume use in commerce here.

This Court thus concludes, as did the courts in *GEICO*, *800-JR Cigar*, *Humble Abode*, *Edina Realty*, and *Wentworth*, that the sale of trademarked terms in the AdWords program is a use in commerce for the purposes of the Lanham Act. While the Second Circuit's decision in *1-800 Contacts* and the subsequent district court decisions may cause the Ninth Circuit to consider this issue explicitly, the lengthy discussions of likelihood of confusion in *Brookfield* and *Playboy* would have been unnecessary in the absence of actionable trademark use. Accordingly, while Google's analogies to trademark infringements outside the digital realm are attractive, the Court will deny Google's motion for summary judgment to the extent that it is brought on the basis of an asserted absence of trademark use.

2.    Enforceability of "American Blinds" Trademark

Google next contends that ABWF's claims pertaining to the "American Blinds" mark are not viable because that mark is not enforceable. Google asserts that "American Blinds" was not registered at the time the present action was commenced, that ABWF is not entitled to the statutory presumption of validity and exclusive rights granted by 15 U.S.C. § 1115, that it cannot

10

1    prove secondary meaning of "American Blinds," and that ABWF's recent use of "American

2    Blinds" is only a litigation ploy.[13]

3         The "American Blinds"[14] mark was registered in the United States Patent and Trademark

4    Office on September 26, 2006. 15 U.S.C. § 1115(a) provides that registration of a mark is

5    "prima facie evidence of the validity of the registered mark and of the registration of the mark, of

6    the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered

7    mark in commerce."[15]   The presumption of ownership under 15 U.S.C. § 1115(a) attaches at the

8    date of the filing of the application for federal registration. *Sengoku Works Ltd. v. RMC*

9    *International, LTD*., 96 F.3d 1217, 1219-20 (9th Cir. 1996). ABWF applied for the "American

10   Blinds" mark on April 9, 2004. Hamm Decl. Ex. I. Google cites case law from the Third Circuit

11   indicating that if registration occurs after the first allegedly infringing use commences, the

12   presumption does not apply and the plaintiff must establish that it holds an enforceable common-

13   law trademark. Motion 15 (citing *Commerce Nat'l Ins. Servs., Inc. v. Commerce Ins. Agency,*

14   *Inc.*, 214 F.3d 432 (3d Cir. 2000)). ABWF has identified no contrary Ninth Circuit authority.

15   ABWF's counterclaim alleging infringement was filed one month after the registration date, and

16

17        [13]  Elsewhere, Google asserts that "ABWF's claims that Google infringes its two

18   purported common law marks - 'American Blind' and 'American Blinds' - must fail because
     ABWF cannot prove that it has any rights in those marks." Motion 2.

19

20        [14]   The Court also has considered Google's limited references to the asserted

     unenforceability of the "American Blind" mark, and concludes that these references were
21   sufficient to inform the Court of the basis of the motion and to give notice thereof to ABWF.
     ABWF also treats the single and plural versions of this mark as interchangeable for the purposes

22   of this action. *See* Answer and Counterclaim ¶ 17 ("Since at least as early as 1986, and long
     prior to the acts of the Defendants complained of herein, American Blind adopted and used, and

23   has continued to use, the names and marks AMERICAN BLIND and AMERICAN BLINDS
     (hereinafter collectively identified as "AMERICAN BLIND") in connection with home

24   decorating products and related services which have been offered for sale and sold in interstate

25   commerce in the United States, including the State of California.").

26        [15]  A mark becomes incontestable under 15 U.S.C. § 1065 after five years of continuous

27   use since registration and after conformance with the procedures identified in that section. Such
     an incontestable mark becomes conclusive evidence of the registrant's ownership of and

28   exclusive right to use the mark. 15 U.S.C. § 1125(b). ABWF does not assert that it registered
     the mark more than five years ago.

11

Case No. C 03-5340 JF (RS)
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT
(JFLC1)

1    the first alleged infringement occurred prior to registration.  Accordingly, the Court considers

2    whether ABWF has provided evidence of a enforceable common-law interest in the mark

3    "American Blind."

4        The parties dispute the nature of the term "American Blind."  "Trademark law groups

5    terms into four categories: (1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary or

6    fanciful."  *Japan Telecom, Inc. v. Japan Telecom America Inc.*, 287 F.3d 866, 872 (9th Cir.

7    2002) (internal quotation marks omitted).   Google asserts that "American Blind" is descriptive.

8    ABWF claims that "American Blind" is "inherently distinctive," or, in other words, suggestive,

9    or arbitrary or fanciful.  *See Yellow Cab Co. Of Sacramento v. Yellow Cab Co. Of Elk Grove,*

10   *Inc.,* 419 F.3d 925, 926 (9th Cir. 2005).  "Descriptive terms . . . describe a person, a place or an

11   attribute of a product."  *Id.* (internal quotation marks and ellipses omitted).  However, ABWF

12   does not point to evidence sufficient to create a triable issue of fact as to whether the mark

13   "American Blind" is inherently distinctive.  Rather, like the mark "Japan Telecom" in the case of

14   that name, "American Blind" is descriptive.

15       A descriptive common-law mark must acquire secondary meaning to become

16   enforceable.  *See e.g. Norm Thompson Outfitters, Inc. v. General Motors Corp*., 448 F.2d 1293,

17   1299 (9th Cir. 1971); *Japan Telecom*, 287 F.3d at 873.  "In evaluating the sufficiency of evidence

18   of secondary meaning, [the Ninth Circuit looks] to a number of factors, including (1) whether

19   actual purchasers of the product bearing the claimed trademark associate the trademark with the

20   producer, (2) the degree and manner of advertising under the claimed trademark, (3) the length

21   and manner of use of the claimed trademark, and (4) whether use of the claimed trademark has

22   been exclusive."  *Id.* (internal quotation marks omitted).  The Court concludes that ABWF has

23   not produced sufficient evidence to allow a reasonable trier of fact to conclude that "American

24   Blinds" has acquired secondary meaning.  The evidence provided by ABWF either is dated after

25   the first alleged infringement or is undated.  ABWF offers general declarations regarding the

26   strength of its combined marks, but it fails to provide any detailed information regarding the use

27   of the "American Blinds" mark.  Accordingly, the Court will grant summary judgment to the

28   extent that ABWF's claims are based on the alleged "American Blinds" mark.  Because ABWF

1  treats the alleged "American Blind" mark as equivalent to the alleged "American Blinds" mark

2  and because the record reflects a similar absence of evidence of its inherent distinctiveness or

3  secondary meaning, the Court also will grant summary judgment in favor of Google to the extent

4  that the claims are based on the alleged "American Blind" mark.

5      3.    <u>Trademark Infringement and Confusion</u>

6          Google moves for summary judgment on the ground that ABWF cannot prove a

7  likelihood of confusion with respect to any of the asserted marks.[16]  ABWF argues that it can

8  prove a likelihood of confusion and appears to base its arguments on the initial interest confusion

9  doctrine.

10          "The core element of trademark infringement is whether the similarity of the marks is

11  likely to confuse customers about the source of the products. . . .  Initial interest confusion occurs

12  when the defendant uses the plaintiff's trademark in a manner calculated to capture initial

13  consumer attention, even though no actual sale is finally completed as a result of the confusion."

14  *Interstellar Starship Services, Ltd. v. Epix, Inc.*, 304 F.3d 936, 941 (9th Cir. 2002) (internal

15  citations and quotation marks omitted).   Likelihood of confusion is a mixed question of law and

16  fact.  *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1355-56 (9th Cir. 1985).  "To evaluate

17  the likelihood of confusion, including initial interest confusion, the so-called *Sleekcraft* factors

18  provide non-exhaustive guidance."  *Id.*  Those factors are:

19
20
21
22
        1. strength of the mark;
        2. proximity of the goods;
        3. similarity of the marks;
        4. evidence of actual confusion;
        5. marketing channels used;
        6. type of goods and the degree of care likely to be exercised by the purchaser;
        7. defendant's intent in selecting the mark; and
        8. likelihood of expansion of the product lines.

23
24
25
26
27
28

---

[16]  As discussed above, the Court will grant summary judgment in favor of Google to the extent that ABWF bases its counter-complaint on the "American Blind" or "American Blinds" marks.  Three other marks are listed in ABWF's answer and counter-complaint: "American Blind Factory," "Decoratetoday," and "American Blind & Wallpaper Factory."  ABWF also refers to the mark "American Blind & Wallpaper" in opposition to Google's motion, Opposition 5-6, but that mark does not appear in the answer and counter-complaint.

1    *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979). The Ninth Circuit has

2    "cautioned that district courts should grant summary judgment motions regarding the likelihood

3    of confusion sparingly, as careful assessment of the pertinent factors that go into determining

4    likelihood of confusion usually requires a full record." *Thane Intern., Inc. v. Trek Bicycle Corp.*,

5    305 F.3d 894, 901-02 (9th Cir. 2002).

6        Google argues that actions of participants in AdWords should not be treated as actions of

7    Google: "As for Google, none of the *Sleekcraft* factors apply." Reply 15. However, the Ninth

8    Circuit applied the *Sleekcraft* factors to Netscape in *Playboy*. The court concluded that Playboy

9    could proceed past the summary judgment stage on either a direct or a contributory infringement

10    theory, *Playboy*, 354 F.3d at 1024, and it weighed the *Sleekcraft* factors as if Netscape were

11    responsible for the competitors' advertisements. *Playboy*, 354 F.3d at 1026-29. The existence of

12    labels on Google's "Sponsored Links" may be relevant to the question of whether a consumer is

13    confused for the purposes of trademark law, but the Court sees no reason why that difference

14    between this case and *Playboy* should cause it to apply the *Sleekcraft* factors differently in the

15    instant case.

16        As in *Playboy*, evidence of confusion is the most significant issue in applying the

17    *Sleekcraft* factors in the instant case. *See Playboy*, 354 F.3d at 1026 ("The expert study PEI

18    introduced establishes a strong likelihood of initial interest confusion among consumers. Thus,

19    factor four alone probably suffices to reverse the grant of summary judgment."). ABWF offers

20    the report of its expert, Alvin Ossip, as evidence of actual confusion. The report finds that

21    twenty-nine percent of respondents falsely believed, after being shown a Google search results

22    page for the entry "American Blinds," that "Sponsored Links" appearing on that page were

23    affiliated with ABWF. Opposition 28, Ossip Study 7.[17] Google attacks the methodology and

24    execution of the survey on multiple bases, arguing that the survey has no probative value.

25        The Ninth Circuit has explained that a survey may be admitted as long as it is conducted

26    according to accepted principles and is relevant. *Wendt v. Host International, Inc.*, 125 F.3d 806,

27

28        [17] The Ossip study is Exhibit O to the Hamm Declaration in support of summary judgment.

Case No. C 03-5340 JF (RS)
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT
(JFLC1)

814 (9th Cir. 1997). "Technical unreliability goes to the weight accorded to a survey, not its admissibility," and that the better course for a district court in such a situation is to "admit the survey and discount its probative value." *Prudential Insurance Co., v. Gibraltar Financial Corp.*, 694 F.2d 1150, 1156 (9th Cir. 1982). Admissibility of a survey is a question of law:

> Treatment of surveys is a two-step process. First, is the survey admissible ? That is, is there a proper foundation for admissibility, and is it relevant and conducted according to accepted principles? This threshold question may be determined by the judge. Once the survey is admitted, however, follow-on issues of methodology, survey design, reliability, the experience and reputation of the expert, critique of conclusions, and the like go to the weight of the survey rather than its admissibility. These are issues for a jury or, in a bench trial, the judge.

*Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1263 (9th Cir. 2001).

Google offers two principal critiques of the Ossip study: that it lacks a control group and that it studied confusion only as to the "American Blinds" mark, which does not appear on any actual products, and, as discussed above, is not enforceable.[18] The lack of a control in the study clearly reduces its probative value, but Google cites no authority holding that such a deficiency is sufficient to render the survey inadmissible as a matter of law. Nor does Google point to any authority holding that a study must include all of a party's contested marks in order for it to be relevant evidence of confusion as to each mark. Two of the registered marks that remain at issue in the litigation, "American Blind Factory" and "American Blind & Wallpaper Factory," are similar to "American Blinds." Evidence of confusion stemming from Google's use of "American Blinds" thus has at least some relevance to the question of whether there is confusion stemming from Google's use of these two marks. The remaining mark at issue in the litigation, "Decoratetoday," does not bear any similarity to "American Blinds." Accordingly, the Court concludes that the Ossip study is relevant and admissible only to the extent that ABWF's claims are based upon the marks "American Blind Factory" and "American Blind & Wallpaper Factory," and not to the extent that the claims are based upon the mark "Decoratetoday."

---

[18] Google also criticizes the study for affirmatively choosing as respondents people who had claimed to have heard of "American Blinds" products; over-counting confusion among study participants; failing to replicate real-life conditions as closely as possible; and failing to use a blind-panel to categorize responses. The Court concludes that each of these challenges goes to weight rather than the admissibility of the survey.

15

1    Four of the remaining *Sleekcraft* factors support a finding that there is sufficient evidence

2    to create a triable issue of fact regarding the likelihood of confusion.  First, the goods offered by

3    competitors linked to by "Sponsored Links" as a result of the purchase of trademarks as

4    keywords are in close proximity with those offered by ABWF.  Second, the terms sold by Google

5    in the AdWords program are the trademarked terms, so they are exactly similar to the marks at

6    issue.[19]  Third, ABWF has introduced evidence that a low degree of consumer care should be

7    expected of internet consumers and that many cannot identify which results are sponsored.  *See*

8    Garrity Decl. Ex. L.[20]  Fourth, the evidence suggests that Google used the mark with the intent to

9    maximize its own profit, so the intent factor favors ABWF.  With respect to the final relevant

10   *Sleekcraft* factor, the evidence before the Court suggests that the strength of the marks is

11   ambiguous.

12   Having considered the *Sleekcraft* factors, the Court concludes that ABWF has produced

13   sufficient evidence of likelihood of confusion to withstand Google's motion for summary

14   judgment as to the "American Blind Factory" and "American Blind & Wallpaper Factory"

15   marks.[21]  While the Ossip study does not provide evidence relevant to the "Decoratetoday" mark,

16

17       [19]  The Ninth Circuit explained in *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199 (9th

18   Cir. 2000) that, "in the context of the Web [] the three most important *Sleekcraft* factors are (1)
     the similarity of the marks, (2) the relatedness of the goods or services, and (3) the simultaneous

19   use of the Web as a marketing channel."  *Id.* at 1205 (quotation marks omitted).  The first two
     elements of this "internet trinity," *see Interstellar Starship Services*, 304 F.3d at 942, are present

20   in the instant case and the third, the marketing channels factor has little weight in this particular
     inquiry.  *See Playboy*, 354 F.3d at 1028 ("PEI and the advertisers use identical marketing

21   channels. . . .  Given the broad use of the Internet today, the same could be said of countless

22   companies.  Thus, this factor merits little weight.").
          The Ninth Circuit also explained in *Playboy* that where, as here, "the advertisers' goods

23   and [the goods of the company alleging infringement] are already related," the likelihood of

24   expansion of product lines factor is "irrelevant."  *Id.* at 1029.

25       [20]  The cited study is not specific as to the search engine used, but this does not deprive it
     of probative value with respect to this *Sleekcraft* factor.

26

27       [21]  Google argues that ABWF cannot succeed on its trademark infringement action
     because it has not produced any evidence showing that a user landing on the page linked to by

28   the "Sponsored Link" cannot "readily see that it not what she sought" and contends that such
     "momentary confusion before she clicks the back button cannot suffice to support a claim for

1  the Court concludes that the evidence pertaining to the remaining *Sleekcraft* factors provides a

2  sufficient basis for denying summary judgment as to this mark as well.[22]  The lack of relevant

3  survey evidence pertaining to the "Decoratetoday" mark may make it harder for ABWF to

4  convince a jury of the likelihood of confusion surrounding Google's use of that mark, but the

5  Court may not grant summary judgment on that basis alone.

6          As discussed above in the context of trademark use, the future application of the initial

7  interest confusion doctrine to identified, sponsored links is an unsettled question in the Ninth

8  Circuit.  Judge Berzon's concurrence in *Playboy* suggests that the doctrine would reach such

9  situations and criticizes such a result:

10          As applied to this case, *Brookfield* might suggest that there could be a Lanham
       Act violation even if the banner advertisements were clearly labeled, either by the
11      advertiser or by the search engine.  I do not believe that to be so.  So read, the
       metatag holding in *Brookfield* would expand the reach of initial interest confusion
12      from situations in which a party is initially confused to situations in which a party
       is never confused.  I do not think it is reasonable to find initial interest confusion
13      when a consumer is never confused as to source or affiliation, but instead knows,
       or should know, from the outset that a product or web link is not related to that of

14  _____

15  damages."  Motion 25.  That is not the law of the Ninth Circuit.

16          Google suggests that *Playboy* involved users who "having typed 'Playboy' into their
    search engine, were presented with an *unlabelled* banner ad on the search-results page that led
17  them to believe that they had in fact arrived at Playboy's website."  Motion 24 (emphasis in
    original).  However, the opinion in *Playboy* does not state that the users thought they had landed
18  on Playboy's site or that it is a requirement of the initial interest confusion doctrine that they
    have had such a thought.  Instead, the court said: "[M]any of the advertisements instruct users to
19  'click here.'  Because of their confusion, users may follow the instruction, believing they will be
    connected to a PEI [Playboy] site.  *Even if they realize 'immediately upon accessing' the*
20  *competitor's site that they have reached a site 'wholly unrelated to' PEI's, the damage has been*
    *done*: Through initial consumer confusion, the competitor 'will still have gained a customer by
21  appropriating the goodwill that [PEI] has developed in its [] mark."  *Id.* at 1025 (emphasis
    added).  Accordingly, the Court will not grant summary judgment to Google on the basis of
22  ABWF's asserted failure to examine the website to which the "Sponsored Links" connect.

23

24          [22]  Likelihood of confusion tests articulated by the Ninth Circuit are intended to serve as a
    "non-exclusive series of factors that are helpful in making the ultimate factual determination."
25  *Eclipse Associates Ltd. v. Data General Corp.*, 894 F.2d 1114, 1118 (9th Cir. 1990).  The eight-
    factor *Brookfield* test is "pliant, and the relative import of each factor is case specific."
26  *Interstellar Starship Services*, 304 F.3d at 942.  The Court concludes that in the instant case, the
    absence of evidence of actual confusion regarding the "Decoratetoday" mark is insufficient alone
27  to support a grant of summary judgment when other factors weigh against a grant of summary
    judgment.
28

                                             17

the trademark holder because the list produced by the search engine so informs him.

*Playboy*, 354 F.3d at 1034-35 (Berzon, J. concurring). However, even if this Court were to treat Judge Berzon's concurrence as controlling law, which it cannot, it would still have to determine whether a consumer "knows or should know, from the outset" that the sponsored link is not related to ABWF, the trademark holder. It is undisputed that Google identifies "Sponsored Links," but the reasonable response of a consumer to these links remains a disputed issue of fact.

4.    Trademark Dilution

ABWF also brings claims for trademark dilution under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c),[23] and Cal. Bus. & Prof. Code § 14330. Google argues that ABWF's dilution claims fail because ABWF has not presented evidence that its marks are famous.

The Lanham Act creates a right of action for dilution of a famous mark,[24] as does the California dilution statute.[25] Under the Lanham Act,

> a mark is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner. In determining whether a mark possesses the requisite degree of recognition, the court may consider all relevant factors, including the following:

---

[23] Also known as the Federal Trademark Dilution Act ("FTDA").

[24] "Subject to the principles of equity, the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury." 15 U.S.C. § 1125(c)(1).

Google notes that 15 U.S.C. § 1125 was amended in October 2006. *See* Pub.L. 109-312, § 2, 120 Stat. 1730 (Oct. 6, 2006). The earlier version of the act did not include a reference to "the general consuming public" and enumerated eight non-comprehensive factors that a court could consider in determining fame. Google contends that prospective, injunctive relief must be governed by the updated act, and that any damages must be sought under the previous version of the act.

[25] "Likelihood of injury to business reputation or of dilution of the distinctive quality of a mark registered under this chapter, or a mark valid at common law, or a trade name valid at common law, shall be a ground for injunctive relief notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services." Cal. Bus. & Prof. Code § 14330.

1           (i) The duration, extent, and geographic reach of advertising and publicity
of the mark, whether advertised or publicized by the owner or third parties.

2           (ii) The amount, volume, and geographic extent of sales of goods or
services offered under the mark.

3           (iii) The extent of actual recognition of the mark.

         (iv) Whether the mark was registered under the Act of March 3, 1881, or

4           the Act of February 20, 1905, or on the principal register.

5  15 U.S.C. § 1125(c)(2)(A).  "The Ninth Circuit has made it clear that the protection afforded by

6  California's anti-dilution statute extends only to highly distinctive, well-known marks."  *Metro*

7  *Pub., Ltd. v. San Jose Mercury News, Inc*, 861 F.Supp. 870, 881 (N.D.Cal. 1994).

8        ABWF has not conducted a fame survey, but its failure to perform such a survey is not

9  dispositive of the question before the Court.  ABWF presents evidence of fame in the form of

10  declarations that the marks (1) have been used in advertising and publicity for an extended period

11  of time in a broad geographic area; (2) have been on a large amount of goods sold under the

12  mark; and (3) have been registered.  The evidence is contained in the declaration of Jeffrey

13  Alderman, Director of Business Development and E-Commerce for ABWF.  Google objects to

14  that declaration on multiple grounds.[26]  Assuming without deciding that the declaration is

15  admissible, the Court concludes that that ABWF has not produced sufficient evidence to allow a

16  reasonable trier of fact to conclude that ABWF's marks are famous or distinctive as required

17  under either the federal or the state dilution statute.[27]  Accordingly the Court will grant summary

18  judgment on ABWF's third and fourth claims.

19     5.   <u>Unclean Hands</u>

20        Google contends that all of ABWF's claims are barred by the unclean hands doctrine

21  because ABWF engages in the same conduct that it alleges, namely purchasing the trademarks of

22  its competitors as keywords under the AdWords program.  The Ninth Circuit has explained that:

23

24     [26]  ABWF filed further exhibits in support of its opposition on the eve of oral argument

25  and shortly thereafter.  ABWF describes these exhibits as supplying the evidence that Alderman
summarizes in his declaration.  *See* Response to Objections to Alderman Declaration 2.

26  However, the exhibits do not provide support for ABWF's arguments beyond that provided by
the Alderman declaration.

27

28     [27]  The Court need not determine which version of the Lanham Act governs the various
aspects of ABWF's dilution claim.

> Unclean hands . . . does not stand as a defense that may be properly considered independent of the merits of the plaintiff's claim-such as the defenses of the statute of limitations or the statute of frauds. . . . In the interests of right and justice the court should not automatically condone the defendant's infractions because the plaintiff is also blameworthy, thereby leaving two wrongs unremedied and increasing the injury to the public. Rather the court must weigh the substance of the right asserted by plaintiff against the transgression which, it is contended, serves to foreclose that right. The relative extent of each party's wrong upon the other and upon the public should be taken into account, and an equitable balance struck. The ultimate decision is whether the deception actually caused by plaintiff 'as compared with the trading methods of the defendant warrant punishment of the plaintiff rather than of the defendant.'

*Republic Molding Corp. v. B. W. Photo Utilities*, 319 F.2d 347, 350 (9th Cir. 1963). The Court has considered the equities involved in this case and concludes that the doctrine of unclean hands does not bar ABWF's claims. ABWF has submitted evidence of its willingness to enter into agreements with competing companies to refrain from buying each other's trademarks as keywords under the AdWords program. In addition, the large number of businesses and users affected by Google's AdWords program indicates that a significant public interest exists in determining whether the AdWords program violates trademark law.

## IV. ORDER

Good cause therefor appearing, IT IS HEREBY ORDERED that Google's motion for summary judgment is GRANTED as to ABWF's third and fourth claims, and to the extent that other claims are based upon the "American Blind" and "American Blinds" marks. The motion is DENIED as to the remaining claims.

DATED: April 18, 2007.

_____
JEREMY FOGEL
United States District Judge

20

This Order has been served upon the following persons:

| | |
|---|---|
| Ethan B. Andelman | andelmane@howrey.com, gagnons@howrey.com |
| Dawn Beery | dbeery@kelleydrye.com |
| Susan Jean Greenspon | sgreenspon@kelleydrye.com, cplater@kelleydrye.com; vallen@kelleydrye.com; sdunlap@kelleydrye.com |
| Ravind Singh Grewal | rsg@kvn.com |
| Klaus Hemingway Hamm | khamm@kvn.com, efiling@kvn.com; wik@kvn.com |
| Ajay Krishnan | akrishnan@kvn.com, efiling@kvn.com; rthomas@kvn.com |
| Mark A. Lemley | mlemley@kvn.com, srosen@kvn.com |
| Michael H. Page | mhp@kvn.com, efiling@kvn.com; sjr@kvn.com; nsn@kvn.com |
| Robert Nathan Phillips | phillipsr@howrey.com, gagnons@howrey.com |
| Caroline Claire Plater | cplater@kelleydrye.com, heberhart@kelleydrye.com |
| David A. Rammelt | drammelt@kelleydrye.com, sdunlap@kelleydrye.com |

Notice will be delivered by other means to:

Paul W. Garrity
Kelley Drye & Warren LLP
101 Park Avenue
New York, NY 10178

Case No. C 03-5340 JF (RS)
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT
(JFLC1)