**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------X
SITE PRO-1, INC.,

        Plaintiff,

    - against -

BETTER METAL, LLC,

        Defendant.
-----------------------------------------------------X

**OPINION & ORDER**

06-CV-6508 (ILG) (RER)

**RAMON E. REYES, JR., Magistrate Judge:**

Plaintiff Site Pro-1, Inc. ("SitePro1") filed this action seeking relief for trademark infringement, unfair competition and dilution under the Lanham Act, 15 U.S.C. §§ 1051, *et seq.*, and New York State law. SitePro1 contends that defendant Better Metal, LLC ("Better Metal") impermissibly used plaintiff's SITE PRO 1® trademark in the "metadata" or "metatags" of its website. SitePro1 also contends that Better Metal improperly purchased a "sponsored search" from Yahoo!.com utilizing the SITE PRO 1® mark in a search algorithm. SitePro1 argues that these acts improperly diverted Internet traffic to Better Metal's website when consumers searched for the SitePro1 website.

Better Metal has moved to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendant argues that dismissal of the complaint is mandated as its use of the SITE PRO 1® mark was not use of a trademark in commerce as required by the Lanham Act. The parties have consented to have me decide the motion pursuant to 28 U.S.C. § 636(c)(1). For the reasons which follow, defendant's motion is granted.

BACKGROUND

The facts are straightforward and not in dispute. SitePro1 manufactures and sells cable wire, cable mounts, clamps, supports, antenna supports, and metal connectors utilized in the construction of wireless telecommunications towers. Complaint, ¶¶ 6, 11, 13. On July 4, 2006, the United States Patent and Trademark Office approved SitePro1's application for registration of the SITE PRO 1® mark (No. 3,111,463) in connection with its products. *Id.*, ¶ 10. SitePro1 "has sold hundreds of thousands of dollars of metal components for constructing exterior wireless communications transmitter and receiver facilities under its SITE PRO 1® mark." *Id.*, ¶ 7. SitePro1 maintains a website at www.sitepro1.com, through which it markets its products. *Id.*, ¶ 9.

Better Metal is a competitor of SitePro1, and sells similar products. *Id.*, ¶ 12. Like SitePro1, Better Metal markets its products on the Internet, at www.bettermetal.com. SitePro1 contends that

> for the purpose of improperly directing Internet users to its site, Better Metal placed SitePro1's SITE PRO 1® trademark in the metadata and/or meta tags of its www.bettermetal.com and/or improperly included SitePro1's SITE PRO 1® in a search engine algorithm utilized by the Yahoo! Search engine.

*Id.*, ¶ 14. SitePro1 contends further that

> When an internet user performs a search for "Site Pro 1", the Yahoo! Search engine retrieves a listing for the www.bettermetal.com site and posts that listing before SitePro1's www.sitepro1.com website.

*Id.*, ¶ 15.

Better Metal argues that SitePro1's allegations "are somewhat unclear, [but] admits that it purchased a 'sponsored search'[1] from Yahoo! that caused the www.bettermetal.com site to be included among the listings when a Yahoo! search engine user searched for some combination of keywords "1," "pro" and "site." Defendant's Memorandum in Support of Motion to Dismiss, at 2. It is undisputed, however, that the SITE PRO 1® mark was <u>not</u> displayed in the sponsored search result linking to the Better Metal website. *Id.*, Ex. 2 (depicting sponsored search results). Better Metal also admits, for the purpose of this motion, that it "placed data in the metatags[2] of its website to cause a Yahoo search for 'Site Pro 1' to yield, among other results, a link to Better Metal's website." Defendant's Reply in Support of Motion to Dismiss, at 3. Nevertheless, Better Metal argues that SitePro1 cannot recover in this action because Better Metal's use of the Site Pro 1® mark is not use of a trademark in commerce within the meaning of the Lanham Act.

DISCUSSION

I.  Standard of Review

A motion to dismiss under Rule 12(b)(6) should be granted only where "it appears beyond a doubt that plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Levitt v. Bear Stearns & Co.*, 340 F.3d 94, 101 (2d Cir. 2003) (internal quotations and citations omitted). The complaint need only provide "a short and plain statement of the

---

[1] A "sponsored search" or "sponsored link" causes the purchaser's website to be featured among the listing when an Internet user searches for some combination of keywords on a particular search engine, *e.g.*, Yahoo! or Google. *See* Complaint, Ex. B.

[2] Metadata or "[a] 'metatag' is a list of words hidden in a web site acting as an index or reference source identifying the content of the web site for search engines." J. Thomas McCarthy, Trademarks and Unfair Competition § 25:69 (4th ed.). Metatags have been "analogized to the subject index of a card catalog indicating the general subject of a book." *Id.*

3

claim showing that the pleader is entitled to relief." *Swierkiewicz v. Sorema*, 534 U.S. 506, 512 (2002) (quoting Fed. R. Civ. P. 8(a)(2)). Thus, "a plaintiff is required only to give a defendant fair notice of what the claim is and the grounds upon which it rests." *Leibowitz v. Cornell Univ.*, 445 F.3d 586, 591 (2d Cir. 2006).

In deciding a motion to dismiss, a court must liberally construe the claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *E.g., Cargo Partner AG v. Albatrans, Inc.*, 352 F.3d 41, 44 (2d Cir. 2003). The court's task "is merely to assess the legal feasability of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Levitt*, 340 F.3d at 101 (internal quotations and citations omitted). The issue is not whether a plaintiff will ultimately prevail but whether he or she is entitled to offer evidence to support the claims. *See Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995). The court must limit itself to the facts alleged in the complaint, to any documents attached to the complaint as exhibits or incorporated by reference therein, to matters of which judicial notice may be taken, or to documents within plaintiff's possession or of which plaintiffs had knowledge and relied upon in bringing suit. *See Brass v. American Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir. 1993).

II.     Better Metal Has Not Used The Site Pro 1® Trademark in Commerce

Whether use of another company's registered trademark in metadata or as part of a sponsored search constitutes use of a trademark in commerce under the Lanham Act has been addressed by several courts in this Circuit and others. The courts in other circuits have generally sustained such claims. *E.g., Australian Gold Inc. v. Hatfield*, 436 F.3d 1228 (10th Cir. 2006) (metadata use); *Brookfield Communications v. West Coast Entertainment*, 174 F.3d 1036 (9th Cir.

4

1999) (metadata use); *J.G. Wentworth, S.S.C. Limited Partnership v. Settlement Funding LLC*, No. 06-0597, 2007 WL 30115 (E.D. Pa. Jan. 4, 2007) (metadata and sponsored search use); *Buying for the Home, LLC v. Humble Abode, LLC*, 459 F. Supp. 2d 310 (D. N.J. 2006) (sponsored search use); *Edina Realty, Inc. v. TheMLSonline.com*, No. 04-4371 (JRT/FLN), 2006 WL 737064 (D. Minn. Mar. 20, 2006) (sponsored search use); *Google v. American Blind & Wallpaper Factory, Inc.*, No. 03-05340, 2005 WL 832398 (N.D. Cal. Mar. 30, 2005) (sponsored search use); *GEICO v. Google, Inc.*, 330 F. Supp. 2d 700 (E.D. Va. 2004) (sponsored search use). The courts in this Circuit, however, have largely rejected these claims.

For example, in *Merck & Co., Inc. v. Mediplan Health Consulting, Inc.*, 425 F. Supp. 2d 402 (S.D.N.Y. 2006), the district court rejected the argument that the defendant's purchase of a sponsored link containing plaintiff's trademark constituted use of a trademark in commerce within the meaning of the Lanham Act. The court noted that under the Lanham Act, a trademark is "used in commerce" in connection with goods when "it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale, and . . . the goods are sold or transported in commerce." 15 U.S.C. § 1127(1). In so ruling, the court relied heavily on *1-800 Contacts v. WhenU.Com, Inc.*, 414 F.3d 400 (2d Cir. 2005),[3] and noted:

---

[3] In *1-800 Contacts*, the defendant used software that utilized plaintiff 1-800 Contact's website address in its internal code, and delivered "pop-up" advertisements in response to a computer user's Internet activity. 414 F.3d at 404-05. Whenever a computer user visited 1-800 Contact's website, the defendant's pop-up ads would appear. *Id.* at 403-05, 410. The Second Circuit rejected 1-800 Contact's claim that this constituted trademark infringement because such use did not constitute improper use of plaintiff's trademark within the meaning of the Lanham Act:

> Here, in the search engine context, defendants do not 'place' the ZOCOR marks on any goods or containers or displays or associated documents, nor do they use them in any way to indicate source or sponsorship. Rather, the ZOCOR mark is 'used' only in the sense that a computer user's search of the keyword "Zocor" will trigger the display of sponsored links to defendants' websites. This internal use of the mark "Zorcor" as a key word to trigger the display of sponsored links is not use of the mark in a trademark sense.

*Id.* at 415.

On reconsideration, the court recognized "that the issue is a difficult one", but nevertheless reiterated its holding. *Merck & Co., Inc. v. Mediplan Health Consulting, Inc.*, 431 F. Supp. 2d 425, 426 (S.D.N.Y. 2006). Again relying on *1-800 Contacts,* the court emphasized the difference between commercial use in the general sense, and use of a trademark under the plain language of the Lanham Act:

> In *1-800 Contacts*, the Second Circuit emphasized that commercial use is not the equivalent of "use in commerce" for trademark purposes. It observed that, "while any number of activities may be 'in commerce' or create a likelihood of confusion, no such activity is actionable under the Lanham Act absent the 'use' of a trademark." 414 F.3d at 412. Trademark use "ordinarily" involves placing a trademark on goods or services to indicate that the goods or services emanate from or are authorized by the owner of the mark. *Id.* at 408.
>
> Here, in the search engine context, defendants do not "place" the ZOCOR marks on goods, containers, displays, or associated documents, nor do they use the marks to indicate source or sponsorship. Rather, the marks are used only in the sense that a computer user's search of the keyword "Zocor" will trigger the display of sponsored links to defendants' websites. This internal use of the keyword "Zocor"

---

> We hold that, as a matter of law, WhenU does not "use" 1-800's trademarks within the meaning of the Lanham Act, 15 U.S.C. § 1127, when it (1) includes 1-800's website address, which is almost identical to 1-800's trademark, in an unpublished directory of terms that trigger delivery of WhenU's contextually relevant advertising to [computer users]; or (2) causes separate, branded pop-up ads to appear on a [computer user's] computer screen either above, below, or along the bottom edge of the 1-800 website window.

*Id.* at 403.

6

is not use of the mark in the trademark sense; rather, this use is more akin to the product placement marketing strategy employed in retail stores, where, for example, a drug store places its generic products alongside similar national brand products to capitalize on the latter's name recognition. *See id.* at 411. The sponsored link marketing strategy is the electronic equivalent of product placement in a retail store.

431 F. Supp. 2d at 427.[4]

Similarly, in *Rescuecom Corp. v. Google, Inc.*, 456 F. Supp. 2d 393 (N.D.N.Y. 2006), the court relied heavily on *1-800 Contacts* and rejected the trademark use argument in a sponsored link case. In rejecting the argument, the court noted that:

Defendant's internal use of plaintiff's trademark to trigger sponsored links is not a use of a trademark within the meaning of the Lanham Act, either because there is no allegation that defendant places plaintiff's trademark on any goods, containers, displays, or advertisements, or that its internal use is visible to the public.

*Id.* at 403.[5]

---

[4] The district court also rejected the plaintiff's attempt to distinguish *1-800 Contacts* on technological grounds. While recognizing that there is a technological difference between pop-up ads and sponsored searches, the court viewed the difference as meaningless. 431 F. Supp. 2d at 427. I agree. The district court also rejected the plaintiff's reliance on *Edina Realty* and other cases which reached the opposite result, as those cases are inconsistent with *1-800 Contacts*. *Id.* at 426.

[5] *See also Hamzik v. Zale Corporation*, No. 06-cv-1300, 2007 WL 1174863, *3 (N.D.N.Y. Apr. 19 2007) ("Case law makes it clear that merely displaying alternative products in response to a computer search on a tradename is not a Lanham Act use."). The district court in *Hamzik* nevertheless found that the particular sponsored search at issue may have violated the Lanham Act because the plaintiff's trademark ("The Dating Ring") appeared on the search results associated with the sale of defendant's goods ("Dating Rings–Zales"). *Id.* ("Thus, unlike *Rescuecom* and *Merck & Co.*, in this case there may be facts demonstrating that Plaintiff's trademark does appear on the displays associated with [defendant's] goods or documents associated with the goods or their sale.") (emphasis in original). Such, however, is not the case here. Plaintiff does not allege that its trademark appeared on defendant's goods or displays associated with their sale.

I am persuaded by the reasoning of the district courts in *Merck* and *Rescuecom*, as well as by the underlying rationale of *1-800 Contacts*. The key question is whether the defendant placed plaintiff's trademark on any goods, displays, containers, or advertisements, or used plaintiff's trademark in any way that indicates source or origin. Here, there is no allegation that Better Metal did so, and therefore no Lanham Act "use" has been alleged. Indeed, the search results submitted as an exhibit to the complaint make clear that Better Metal did not place plaintiff's SITE PRO 1® trademark on any of its goods, or any advertisements or displays associated with the sale of its goods. Complaint, Ex. B. Neither the link to Better Metal's website nor the surrounding text mentions SitePro1 or the SITE PRO 1® trademark. The same is true with respect to Better Metal's metadata, which is not displayed to consumers.

I find unavailing SitePro1's "initial source confusion" argument, as well as its attempts to distinguish the case law from this Circuit. Opposition to Rule 12(b)(6) Motion, at 4-11. Relying on *Brookfield Communications*, 174 F.3d at 1036 and its progeny, plaintiff argues that because Better Metal's actions improperly divert Internet traffic to its website, either through the use of metadata or the sponsored search, "defendant creates *initial source confusion* that is an actionable use in commerce under the Lanham Act." *Id.* at 1 (emphasis added). This precise argument was flatly rejected by the Second Circuit in *1-800 Contacts:*

> 1-800 also argues that WhenU's conduct is "use" because it is likely to confuse C-users as to the source of the ad. . . Again, *this rationale puts the cart before the horse*. Not only are "use," "in commerce," and "likelihood of confusion" three distinct elements of a trademark infringement claim, but *"use" must be decided as a threshold matter* because, while any number of activities may be "in commerce" or create a likelihood of confusion, no such activity is actionable under the Lanham Act absent the "use" of a trademark.

8

414 F.3d at 412 (emphasis added). To the extent plaintiff relies on cases which are not based on the *Brookfield* or the initial source confusion argument, those cases are nevertheless contrary to *1-800 Contacts*, and I decline to follow them.

Accordingly, in light of *1-800 Contacts*, *Merck* and *Rescuecom*, Better Metal's motion to dismiss is granted.

**Dated: May 9, 2007**
       **Brooklyn, New York**

*Ramon E. Reyes, Jr.*
**Ramon E. Reyes, Jr.**
**United States Magistrate Judge**